IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BLUE RIDGE SALVAGE COMPANY, INC., | ) ) ) |
| Plaintiff-Counterdefendant, | ) No. 07 C 6497 |
| vs. | ) District Judge Norgle ) Magistrate Judge Mason |
| TRIBUNE MEDIA SERVICES, INC. | ) ) ) |
| Defendant-Counterplaintiff. | ) |

### PLAINTIFF'S REPLY TO DEFENDANT'S COUNTERCLAIM

Plaintiff, Blue Ridge Salvage Company, Inc. ("Blue Ridge"), by its undersigned counsel, Kevin B. Salam of Wolf Holland & Solovy, LLP, hereby replies to Defendant's, Tribune Media Services, Inc.'s ("TMS") counterclaim as follows:

1. This case is about a contractual right of first refusal granted to the counterplaintiff in 1995, counterplaintiff's timely and effective exercise of that right of first refusal in 2007, and the counterdefendant's breach of its contractual obligations when it premeditatedly reneged upon its obligations to honor the right of first refusal. The rights at issue are very important to these particular parties, and the principles of law are very important to the commercial marketplace. Therefore, the countertplaintiff comes to this Honorable Court most respectfully to seek a vindication of its rights, and rulings from the Court that protect and enforce the sanctity of contractual relationships.

**ANSWER:** Blue Ridge admits that this case is about a contractual right of first refusal granted to TMS in 1995 and that the rights at issue are very important to the parties. Blue Ridge denies the remaining allegations. Blue Ridge further specifically denies that the

1

right of first refusal granted to TMS in 1995 was enforceable at the time TMS attempted to exercise its claimed right of first refusal.

      2.    Counterplaintiff Tribune Media Services, Inc. ("TMS") is a Delaware corporation with its principal place of business in Chicago, Illinois. TMS creates, aggregates and distributes news, information, and entertainment content using print, online, and on-screen mediums.

**ANSWER:**    Blue Ridge admits that TMS is a Delaware corporation with its principal place of business in Chicago, Illinois. Blue Ridge lacks sufficient information to form a belief as to the truth of the remaining allegations.

      3.    Counterdefendant Blue Ridge Salvage Company, Inc. ("Blue Ridge") is a Virginia corporation with its principal place of business in Flint Hill, Virginia. Blue Ridge is the owner of the "Shoe" cartoon feature ("Shoe" or the "Feature").

**ANSWER:**    Blue Ridge admits.

      4.    Non-party King Features Syndicate, Inc. ("King Features") is a Delaware corporation with its principal place of business in New York, New York. King Features distributes comics, columns, editorial cartoons, puzzles, and games to newspapers.

**ANSWER:**    Blue Ridge admits the allegations of paragraph 4 and further states that upon information and belief, King Features' operations consist of more than those described in paragraph 4.

      5.    This is an action for a declaratory judgment pursuant to 28 U.S.C. § 2201. Jurisdiction of this Court is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332 in that the parties are citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

**ANSWER:**    Blue Ridge admits.

      6.    Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(a) in that TMS' principal place of business is in Chicago, Illinois,

and a substantial part of the events giving rise to the claim occurred in this jurisdiction.

**ANSWER:**   Blue Ridge admits.

    7.   On or about August 25, 1995, TMS, Blue Ridge, and Jeffrey K. MacNelly (now deceased) entered into a "Syndication Agreement" (the "Agreement") with respect to the syndication of the Feature. A true and correct copy of the Agreement is attached hereto and incorporated by reference herein as Exhibit A. Blue Ridge and Jeffrey K. MacNelly are referred to collectively in the Agreement as "Artist."

**ANSWER:**   Blue Ridge admits.

    8.   The Agreement includes provisions governing the method by which the Artist must prepare and furnish the Feature to TMS; TMS' syndication and ancillary rights with regards to the Feature; the Artist's compensation for performing obligations under the Agreement; and TMS' right of first refusal. By its terms, the Agreement is set to expire on March 31, 2008.

**ANSWER:**   Blue Ridge denies the allegation "By its terms, the Agreement is set to expire on March 31, 2008." Blue Ridge further states that Paragraph 4 of the Agreement states in part that the "term of this Agreement shall commence on the Effective Date and shall continue until March 31, 2008 ***." Blue Ridge admits that the Agreement addresses the issues referred to in paragraph 8 of TMS' Counterclaim. Blue Ridge further states that the Agreement speaks for itself. Blue Ridge denies any remaining allegations that are inconsistent with the exhibit and/or contain legal conclusions.

    9.   TMS was granted a right of first refusal with regard to the rights to syndicate and distribute the Feature upon expiration of the Agreement. Paragraph 5(b) states: "If Artist desires to grant to anyone the rights to syndicate and distribute the Feature following the expiration of the term of this Agreement, then Artist shall first offer to TMS the right to match a bona fide offer received by Artist for the Feature. If TMS notifies Artist within thirty (30) days after the receipt of such notice that it accepts

the terms and conditions so specified in the bona fide offer to Artist, the notice from Artist and the acceptance by TMS shall constitute a binding agreement."

**ANSWER:**   Blue Ridge admits that the Agreement contains a paragraph 5, titled "Rights of First Refusal" and that paragraph 5(b) contains the language quoted. Blue Ridge further states that the Agreement speaks for itself. Blue Ridge denies any remaining allegations that are inconsistent with the exhibit and/or contain legal conclusions.

      10.    By letter dated July 16, 2007, Blue Ridge notified TMS that it had "received an offer and [has] reached an agreement in principal for the syndication rights in SHOE commencing on expiration of the current relationship with Tribune Media Services, Inc." A true and correct copy of the July 16, 2007 letter is attached hereto and incorporated by reference herein as Exhibit B. The letter did not disclose the identity of the offering person or entity, but summarized that offer in five precise terms, and asked whether TMS wished "to discuss a continued relationship with Blue Ridge Salvage Company, Inc. after expiration."

**ANSWER:**   Blue Ridge admits that a true and correct copy of the July 16, 2007 letter is attached as Exhibit B to the Counterclaim and that it sent the July 16, 2007 letter. Blue Ridge further states that the exhibit speaks for itself. Blue Ridge denies the remaining allegations that are inconsistent with the document and/or contain legal conclusions.

      11.    By letter dated July 19, 2007, and in response to the question of whether TMS would like to continue its relationship with Blue Ridge after expiration of the Agreement, TMS referred to its right of first refusal and unequivocally stated: "The answer is yes." A true and correct copy of the July 19, 2007 letter is attached hereto and incorporated by reference herein as Exhibit C. In this letter TMS invoked the procedure set forth in Paragraph 5(b) of the Agreement, and requested a copy of the bona fide offer Blue Ridge had already allegedly received. TMS further stated in this letter its intention to "draft a new syndication agreement in a timely manner." From that point forward, Blue Ridge made clear its intent to interfere with and to nullify TMS' right of first refusal.

4

**ANSWER:**   Blue Ridge admits that a true and correct copy of the July 19, 2007 letter is attached as Exhibit C to the Counterclaim and that Blue Ridge received this letter. Blue Ridge further states that the exhibit speaks for itself.  Blue Ridge further admits that TMS invoked the requirements of Paragraph 5 calling for Blue Ridge to send to TMS a copy of "a written bid or proposed contract submitted to Artist by a financially responsible third party."  Blue Ridge further states that the July 19, 2007 letter stated "Please send a copy of the written bid or proposed contract by Monday, July 23, 2007 so that TMS can consider 'the terms and conditions so specified, …'  Blue Ridge denies the remaining allegations that are inconsistent with the exhibit and/or contain legal conclusions.  Blue Ridge specifically denies that it had an "intent to interfere with and to nullify TMS' right of first refusal."

> 12. By letter dated July 26, 2007, Blue Ridge stated: "It is our opinion that Tribune Media Services, Inc. will be unable to agree with" the terms provided by the then-unidentified third party offeror. A true and correct copy of the July 26, 2007 letter is attached hereto and incorporated by reference herein as Exhibit D.

**ANSWER:**   Blue Ridge admits that a true and correct copy of the July 26, 2007 letter is attached as Exhibit D to the Counterclaim.  Blue Ridge further states that the exhibit speaks for itself.  Blue Ridge denies any remaining allegations that are inconsistent with the exhibit and/or contain legal conclusions.

> 13. By letter dated July 30, 2007, TMS informed Blue Ridge that TMS was still awaiting receipt of the bona fide offer from the third party. A true and correct copy of the July 30, 2007 letter is attached hereto and incorporated by reference herein as Exhibit E.

**ANSWER:** Blue Ridge admits that a true and correct copy of the July 30, 2007 letter is attached as Exhibit E to the Counterclaim and that Blue Ridge received this letter. Blue Ridge further states that the exhibit speaks for itself and includes the following statement by TMS:

> "As I stated on the phone, TMS will consider matching the offer. But first TMS has to receive an offer, in writing, submitted to Blue Ridge Salvage Company, Inc. by a financially responsible third party. Only then is the offer deemed a "bona fide offer" under terms of the current syndication agreement. And only then does the 30-day right of first refusal period begin to run."

> 14. By letter dated August 9, 2007, TMS stated: "TMS today accepts all five terms offered in Mr. Vladem's July 16, 2007 letter." A true and correct copy of the August 9, 2007 letter is attached hereto and incorporated by reference herein as Exhibit F. TMS enclosed a Syndication Agreement similar to the current Agreement, including terms to match the only <u>five</u> precise terms specified in Blue Ridge's July 16, 2007 letter.

**ANSWER:** Blue Ridge admits that a true and correct copy of the August 9, 2007 letter and proposed syndication agreement referred to therein are attached as Exhibit F to the Counterclaim and that Blue Ridge received this letter and a syndication agreement enclosed therewith. Blue Ridge further states that the exhibit speaks for itself. Blue Ridge denies the remaining allegations that are inconsistent with the document and/or contain legal conclusions. Blue Ridge further denies that "TMS enclosed a Syndication Agreement similar to the current Agreement, including terms to match the only <u>five</u> precise terms specified in Blue Ridge's July 16, 2007 letter." Blue Ridge further states that the "Syndication Agreement" enclosed with the August 9, 2007 letter contains

numerous provisions that do not match the five terms referred to in Mr. Vladem's July 16, 2007 letter, including, paragraph 4(c), which provides:

> In the event of termination, if Blue Ridge Salvage elects to continue syndication of the Feature in any form or through any means, Blue Ridge Salvage shall pay TMS, as compensation for benefits that will inure to Blue Ridge Salvage as a result of Blue Ridge Salvage's association with TMS, a monthly sum equal to fifty percent (50%) of the Feature's total Net Receipts for the month previous to such termination or non-renewal, such payment to be made for a period of twelve (12) months after the date of termination.

> 15.    By letter dated August 15, 2007, Blue Ridge responded to TMS' request for a copy of the written offer from the third party. A true and correct copy of the August 15, 2007 letter is attached hereto and incorporated by reference herein as Exhibit G. Included with Blue Ridge's letter were: (a) a cover letter dated August 8, 2007 from the President of King Features to Blue Ridge and (b) an attachment titled "Proposal for Representation of SHOE Comic Strip 8/8/2007" (the "Proposal") with <u>eight</u> specific terms.

**ANSWER:**    Blue Ridge admits that a true and correct copy of the August 15, 2007 letter and enclosures referred to therein are attached as Exhibit G to the Counterclaim. Blue Ridge further states that the exhibit speaks for itself. Blue Ridge denies the remaining allegations that are inconsistent with the exhibit and/or contain legal conclusions.

> 16.    In its August 15, 2007 letter to TMS, Blue Ridge attempted to characterize the Proposal from King Features as including both the cover letter and the attached Proposal. In addition, Blue Ridge denied the existence of TMS' right of first refusal under the Agreement, referencing a letter of September 20, 2000, which actually said nothing about that right at all. A true and correct copy of the September 20, 2000 letter is attached hereto and incorporated by reference herein as Exhibit H. Moreover, in its August 15, 2007 letter, Blue Ridge questioned TMS' ability to match King Features' eight-term Proposal.

**ANSWER:** Blue Ridge states that the August 15, 2007 letter to TMS speaks for itself and denies any allegations that are inconsistent with the August 15, 2007 letter and/or contain legal conclusions. Blue Ridge further admits that a true and correct copy of the September 20, 2000 letter is attached as Exhibit H to the Counterclaim. Blue Ridge further states that Exhibit H speaks for itself. Blue Ridge denies the remaining allegations that are inconsistent with the Exhibit H and/or contain legal conclusions.

> 17. The August 8, 2007 cover letter from King Features transmitted with Blue Ridge's August 2007 letter essentially was a marketing pitch. It did not include any contractual obligations, and specifically stated that "[a]ttached is a proposal for the representation of the Shoe Comic Strip." Therefore, TMS considered the Proposal itself as the "bona fide offer" from King Features. Thus, by a letter dated August 24, 2007 entitled "Acceptance of Offer," and in keeping with its previous assertions of its intent to do so, TMS expressly exercised its right of first refusal under Paragraph 5(b). A true and correct copy of the August 24, 2007 letter is attached hereto and incorporated by reference herein as Exhibit I. The letter states in relevant part: "TMS hereby notifies Blue Ridge that it accepts the terms and conditions specified in the bona fide offer that Blue Ridge received from King Features. Accordingly, pursuant to the Syndication Agreement, your notice to TMS and this acceptance 'constitute a binding agreement.'" To memorialize that agreement, TMS attached a new Syndication Agreement incorporating each of the <u>eight</u> terms of the King Features' Proposal.

**ANSWER:** Blue Ridge admits that a true and correct copy of the August 24, 2007 letter and proposed "new Syndication Agreement" are attached as Exhibit I to the Counterclaim. Blue Ridge further states that the exhibit speaks for itself. Blue Ridge specifically denies that the August 24, 2007 letter meet the requirements for the exercise of the right of first refusal referred to in paragraph 5 of the 1995 syndication agreement (Exhibit A to Counterclaim). Blue Ridge denies any remaining allegations that are

inconsistent with the exhibit and/or contain legal conclusions.  Blue Ridge further states that the "new Syndication Agreement" enclosed with the August 24, 2007 letter contains numerous provisions that do not match the King Features' proposal referred to in Blue Ridge's August 15, 2007 letter, including paragraph 4(c), which provides:

> In the event of termination, if Blue Ridge Salvage elects to continue syndication of the Feature in any form or through any means, Blue Ridge Salvage shall pay TMS, as compensation for benefits that will inure to Blue Ridge Salvage as a result of Blue Ridge Salvage's association with TMS, a monthly sum equal to fifty percent (50%) of the Feature's total Net Receipts for the month previous to such termination or non-renewal, such payment to be made for a period of twelve (12) months after the date of termination.

18. Despite TMS' clear acceptance of the terms and conditions of King Features' Proposal, by letter dated October 1, 2007, Blue Ridge denied and attempted to nullify TMS' contractual right of first refusal. A true and correct copy of the October 1, 2007 letter is attached hereto and incorporated by reference herein as Exhibit J. Stating among other things (and without any basis) King Feature's cover letter of August 8, 2007 was a part of the Proposal, Blue Ridge contended that the relationship which exists under the Agreement will terminate as of March 31, 2008, and that TMS has no right to extend that relationship.

**ANSWER:**   Blue Ridge admits that a true and correct copy of the October 1, 2007 letter is attached as Exhibit J to the Counterclaim.  Blue Ridge further states that the exhibit speaks for itself.  Blue Ridge denies the remaining allegations, including those that are inconsistent with the exhibit and/or contain legal conclusions.

19. By letter dated October 18, 2007, TMS reiterated that "TMS has unequivocally and unambiguously exercised its right of first refusal," and that pursuant to the Agreement, Blue Ridge's notice to TMS and TMS' subsequent acceptance constitute a binding agreement. A true and correct copy of the October 18, 2007 letter is attached hereto and incorporated by reference herein as Exhibit K. Highlighting the numerous efforts of Blue

Ridge to deprive TMS of its contractual rights, the letter advised Blue Ridge to refrain from entering into an agreement with King Features, and further stated TMS' intention to "take all appropriate actions to protect these contractual rights."

**ANSWER:**   Blue Ridge admits that a true and correct copy of the October 18, 2007 letter is attached as Exhibit K to the Counterclaim.  Blue Ridge further states that the exhibit speaks for itself.  Blue Ridge denies the remaining allegations, including those that are inconsistent with the exhibit and/or contain legal conclusions.

### COUNT I - ACTION FOR DECLARATORY JUDGMENT

     1-19.   TMS incorporates by reference herein the allegations set forth in Paragraphs 1-19 above.

**ANSWER:**   Blue Ridge incorporates by reference herein its answers set forth to Paragraphs 1-19 above.

     20.   As of the date of the filing of this Counterclaim for Declaratory Judgment, Blue Ridge has refused to fulfill its contractual obligations. By refusal, Blue Ridge stated its belief that it is not contractually bound by the Agreement to take the actions demanded by TMS under Paragraph 5(b) of the Agreement. TMS has a legal interest in ensuring that Blue Ridge complies with its contractual obligations, and as indicated by its refusal to comply with these obligations, Blue Ridge has an opposing interest. Therefore, there is an actual controversy between TMS and Blue Ridge about their respective rights and obligations under Paragraph 5(b) of the Agreement

**ANSWER:**   Blue Ridge denies that it has refused to fulfill its contractual obligations in that Blue Ridge in good faith disagrees with TMS' position as to Blue Ridge's contractual obligations.  Blue Ridge admits that it believes "it is not contractually bound by the Agreement to take the actions demanded by TMS under Paragraph 5(b) of the

Agreement." Blue Ridge admits that there is an actual controversy between the parties as to their respective rights and obligations under the Agreement, including Paragraph 5(b).

   21. For these reasons, TMS seeks a declaration from this Court: (a) that TMS has appropriately exercised its right of first refusal under Paragraph 5(b) of the Agreement; (b) that Blue Ridge has entered, or is obligated to enter, into a new agreement with TMS regarding the Feature, effective as of April 1, 2008; and (c) that Blue Ridge may not enter into an agreement regarding the Feature with any person or entity other than TMS.

**ANSWER:** Blue Ridge denies that TMS is entitled to the relief it requests in this paragraph.

### COUNT II-ACTION FOR INJUNCTIVE RELIEF

   1-21. TMS incorporates by reference herein the allegations set forth in Paragraphs 1-21 above.

**ANSWER:** Blue Ridge incorporates by reference herein its answers set forth to Paragraphs 1-21 above.

   22. Based on King Features' Proposal of August 8, 2007 (part of Exhibit G), and Blue Ridge's letter of October 1, 2007 (Exhibit J), it appears that Blue Ridge and King Features intend to enter into an agreement regarding the Feature based on Blue Ridge's erroneous contention that TMS does not have a contractual right of first refusal or, in the alternative, that TMS has failed to exercise effectively its right of first refusal.

**ANSWER:** Blue Ridge admits that it desires to enter into an agreement regarding the Feature with King Features consistent with the terms of the King Features' proposal as detailed in the cover letter dated August 8, 2007 from the President of King Features to Blue Ridge and the attachment titled "Proposal for Representation of SHOE Comic Strip

8/8/2007" both of which are part of exhibit G to the Counterclaim. Upon information and belief, Blue Ridge believes King Features desires to enter into such an agreement with Blue Ridge. Blue Ridge admits the remaining allegations as to its "contention" except that Blue Ridge denies the legal conclusion that its "contention" is erroneous.

> 23. Paragraph 9 of the Agreement provides that "[so long as this Agreement shall be in effect ... Artist shall not enter into any agreement, understanding, or arrangement to prepare any material similar to the Feature for any newspaper ... or for distribution ... Artist and agree that, in the event of any breach of the covenants contained in this paragraph, TMS will not have an adequate remedy at law and shall, in addition to any other appropriate equitable or legal relief, be entitled to an injunction from a court of competent jurisdiction restraining Artist from any such breach."

**ANSWER:** Blue Ridge admits paragraph 9 of the Agreement contains the quoted language. Blue Ridge further states that paragraph 9 does not prohibit Artist from entering into an agreement with respect to the Feature for the period beginning after termination of the Agreement.

> 24. In light of these facts, the Court should permanently restrain, enjoin, and prevent Blue Ridge from entering into any agreement relating to the Feature with King Features or any other person or entity that would interfere with and/or purport to supersede the rights of TMS.

**ANSWER:** Blue Ridge denies that TMS is entitled to the relief it requests in this paragraph.

> 25. The Feature is unique, TMS has no adequate remedy at law, and the public interest would be served by protecting TMS' contractual rights. Therefore, the Court should assert its equitable jurisdiction to prevent Blue Ridge from avoiding its contractual obligations, and to restrain and prevent Blue Ridge from interfering with TMS' property rights in the Feature.

**ANSWER:** Blue Ridge admits that the Feature is unique. Blue Ridge denies the remaining allegations.

                                          Respectfully submitted,
                                          Blue Ridge Salvage Company, Inc.


                                          /s/ Kevin B. Salam
                                                   Its attorney

Kevin B. Salam
**Wolf Holland & Solovy, LLP**
40 Skokie Blvd., Ste. 105
Northbrook, IL 60062
224-330-1717 (Tel.)
224-330-1715 (Fax)