**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **BLUE RIDGE SALVAGE COMPANY, INC.,** | ) ) ) | |
| Plaintiff-Counterdefendant, | ) | No. 07 C 6497 |
| vs. | ) ) | District Judge Norgle Magistrate Judge Mason |
| **TRIBUNE MEDIA SERVICES, INC.** | ) ) ) | |
| Defendant-Counterplaintiff. | ) | |

**PLAINTIFF'S BRIEF IN SUPPORT
OF MOTION FOR JUDGMENT ON THE PLEADINGS**

Now comes the Plaintiff-Counterdefendant, Blue Ridge Salvage Company, Inc. ("Blue Ridge"), by its attorney, Kevin B. Salam of Wolf Holland & Solovy, LLP, and submits this brief in support of its motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

## I. INTRODUCTION.

At issue in this case is whether Blue Ridge, the owner of "Shoe" comic strip (the "Feature") is legally bound to continue its 20 plus year relationship with Tribune Media Services, Inc. ("TMS") for the exploitation of syndication and ancillary rights in the Feature. Over the course of the relationship between the parties, the importance and potential value of these ancillary rights has increased due to the rapid and dynamic changes in the delivery of media and entertainment content across various platforms other than print media.

1

During its relationship with TMS, Blue Ridge repeatedly expressed its concerns about TMS' inability to exploit ancillary rights in the Feature beyond mere syndication of the comic strip.  Blue Ridge felt TMS failed to adequately address these concerns.  As a consequence, Blue Ridge was open to the idea of doing business with someone other than TMS at the end of the current term of its agreement with TMS.  Blue Ridge investigated this possibility prior to the end of the term of the current agreement in order to avoid a break in syndication of the Feature.  King Features Syndicate, Inc. ("King Features") submitted a written proposal to Blue Ridge to acquire the right to exploit the Feature after March 31, 2008, the date Blue Ridge contends is the end of the current agreement with TMS.  When Blue Ridge informed TMS of the King Features' proposal, a dispute arose concerning TMS' claim of a right of first refusal under a 1995 Syndication Agreement.

The dispute between the parties involves (1) whether TMS had a 30-day right of first refusal to match King Features' written proposal to Blue Ridge, (2) whether the terms of the King Features' written proposal are just the eight terms contained in the King Features' written "Proposal for Representation of SHOE Comic Strip 8/8/07" or include terms from the cover letter to the King Features' written proposal, and (3) if TMS had a right of first refusal, whether TMS failed to properly exercise the right of first refusal by including terms that did not match the terms of the King Features' written proposal.

Procedurally, both parties filed claims for a declaration of their respective rights under the disputed right of first refusal.  TMS additionally requested permanent injunctive relief to enforce its claimed right of first refusal.  Both parties have filed their answers and the pleadings are at issue.

Blue Ridge's Motion for Judgment on the Pleadings only addresses a single dispositive issue based upon certain facts admitted by TMS in the pleadings.[1] The issue presented by Plaintiff's motion is the following:

> Did TMS fail to properly exercise its claimed right of first refusal by including in its proposed new syndication agreement paragraph 4(c), which contains an oppressive post termination payment provision that TMS admits was not part of the King Features' proposal?

## II. **FACTS ADMITTED BY THE PLEADINGS.**

King Features, a non-party to this suit, was considering making a proposal to Blue Ridge for the exploitation of both syndication and ancillary rights in the Feature to begin upon the expiration of the term of the TMS agreement. By letter dated July 16, 2007, Blue Ridge informed TMS that it had reached an "agreement in principal" with another party for exploitation of the Feature upon "expiration" of Blue Ridge's relationship with TMS. (Ex. B to TMS' Answer and Counterclaim, attached hereto as **Ex. 1**). In a letter dated July 19, 2007, TMS responded by asserting that it possessed a right of first refusal under paragraph 5(b) of a 1995 Syndication Agreement and pursuant to that paragraph, prior to determining whether to exercise its right of first refusal, TMS was entitled to receive a "written bid or proposed contract submitted to Artist from a financially responsible third party." (The 1995 Syndication Agreement, Ex. A to TMS' Answer and

---

[1] Blue Ridge contends that TMS did not possess a right of first refusal, and even if it did that there are numerous ways in which the TMS 8/24/07 Proposed Syndication Agreement materially deviates from the written King Features' proposal and that these material deviations defeat TMS' 8/24/07 attempted exercise of its claimed right of first refusal. However, for purposes of this motion and without prejudice to its other arguments, Blue Ridge is assuming TMS had the claimed right of first refusal and Blue Ridge is only relying on paragraph 4(c) of the TMS 8/24/07 Proposed Syndication Agreement for its current argument that TMS failed to properly exercise its claimed right of first refusal.

Counterclaim, is attached hereto as **Ex. 2**; TMS' July 19, 2007 letter, Ex. C to TMS' Answer and Counterclaim, is attached hereto as **Ex. 3**).

On July 30, 2007, Beth Fulkerson, Senior Counsel to TMS again reiterated TMS' request for a copy of the written proposal from King Features when she wrote in a letter to Blue Ridge's attorney:

> As I stated on the phone, TMS will consider matching the offer. But first TMS has to receive an offer, in writing, submitted to Blue Ridge Salvage Company, Inc., by a financially responsible third party. Only then is the offer deemed a "bona fide offer" under the terms of the current syndication agreement. And only then does the 30-day right of first refusal period begin to run.

(Ex. E to TMS' Answer and Counterclaim, attached hereto as **Ex. 4**).

Blue Ridge admits that the right of first refusal contained in paragraph 5(b) of the 1995 Syndication Agreement required Blue Ridge to submit to TMS a copy of a "written bid or proposed contract submitted to Artist by a financially responsible third-party." (Blue Ridge's Answer to TMS' Counterclaim at par. 11).

While not agreeing that TMS possessed any right of first refusal, Blue Ridge complied with TMS' requests for Blue Ridge to send to TMS a copy of King Features' written proposal. On August 15, 2007, Blue Ridge sent the King Features' written proposal to TMS. (Ex. G to TMS' Answer and Counterclaim, attached hereto as **Ex. 5**).

In a letter dated August 24, 2007, TMS failed to exercise its claimed right of first refusal and instead, sent a counteroffer. TMS' letter of August 24, 2007 enclosed TMS' proposed new syndication agreement ("TMS 8/24/07 Proposed Syndication Agreement") that was *executed* by David D. Williams, President and CEO of TMS. (Ex. I to TMS' Answer and Counterclaim, attached hereto as **Ex. 6**). Although not part of the King

4

Features' proposal, the TMS 8/24/07 Proposed Syndication Agreement contained a post termination payment provision, paragraph 4(c), which provided:

> In the event of termination, if Blue Ridge Salvage elects to continue syndication of the Feature in any form or through any means, Blue Ridge Salvage shall pay TMS, as compensation for benefits that will inure to Blue Ridge Salvage as a result of Blue Ridge Salvage's association with TMS, a monthly sum equal to fifty percent (50%) of the Feature's total Net Receipts for the month previous to such termination or non-renewal, Such payment to be made for a period of twelve (12) months after the date of termination.

TMS admits at paragraph 35 of its Answer that the King Features Proposal did not contain a post termination payment provision like paragraph 4(c) of the TMS 8/24/07 Proposed Syndication Agreement.

In a letter dated October 1, 2007, Blue Ridge's counsel notified TMS that in its view, TMS had failed to exercise its claimed right of first refusal, in part due to the inclusion of the post termination payment provision in paragraph 4(c). (Ex. J to TMS' Answer and Counterclaim, attached hereto as **Ex. 7**). By letter of October 18, 2007, well beyond the 30-day period of the claimed right of first refusal, TMS' outside counsel expressed TMS' position that paragraph 4(c) was an "immaterial provision" and that Blue Ridge should merely delete this provision from the TMS 8/24/07 Proposed Syndication Agreement. (Ex. K to TMS' Answer and Counterclaim, attached hereto as **Ex. 8**). TMS' counsel demanded that Blue Ridge execute the proposed new syndication agreement within 14 days. (Id.)

5

### III. ARGUMENT.

TMS' failed to properly exercise its claimed 30-day right of first refusal under paragraph 5(b) of the 1995 Syndication Agreement. TMS included in its proposed new syndication agreement, paragraph 4(c), an oppressive post termination payment provision. This constituted a counteroffer by TMS and invalidated TMS' attempted acceptance.

The documents relied upon by Blue Ridge in its request for judgment on the pleadings are admitted by the parties in their respective answers. Additionally, TMS admits in its answer to paragraph 35 that the post termination provision of paragraph 4(c) of its proposed new syndication agreement was not part of the King Features' proposal. Blue Ridge is entitled to judgment on the pleadings because these admitted facts, even when considered in the light most favorable to TMS, establish as a matter of law that TMS failed to properly exercise its claimed right of first refusal under paragraph 5(b) of the 1995 Syndication Agreement. Fed.R.Civ.P. 12(c); Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend, 163 F.2d 449, 452 (7th Cir. 1998).

When Blue Ridge decided it was willing to accept King Features' written proposal and sent a copy to TMS, TMS' claimed 30-day right of first refusal became a 30-day option to match King Features' written proposal. Miller v. LeSea Broadcasting, Inc., 87 F.3d 224, 226 (7th Cir. (Wis.) 1996) (Posner, C.J.).

TMS failed to match the King Features' offer because it added additional terms. "Illinois law demands that an acceptance 'comply strictly with the terms of an offer' (citation omitted)." Venture Associates Corp., v. Zenith Data Systems Corp., 987 F.2d 429, 432 (7th Cir. 1993). In Venture, the Seventh Circuit affirmed dismissal of Plaintiff's

6

breach of contract claim because plaintiff's proposed modifications to defendant's offer, created a counteroffer and precluded formation of a contract at that point in the parties' dealings. Id.

This Court relied on Venture, when it stated "Under Illinois law, it is axiomatic that a proposed acceptance that contains terms different from the original offer is not a valid acceptance; rather, such an acceptance is treated as a counteroffer. * * * Even a minor change in the terms of the offer invalidates the acceptance." Hicks Road Corp. v. Marathon Oil Co., 1994 WL 327361 at p. *4 (N.D. Ill. 1994, Norgle, J.) (Attached hereto as **Ex. 9**); see also, WCC Funding Ltd. v. Gan International, 871 F.Supp. 1017, 1026 (N.D. Ill. 1994, Norgle, J.) (Acceptance must comply strictly with terms of offer, relying on Venture, supra.)

TMS repeatedly told Blue Ridge that TMS' claimed 30-day right of first refusal *requires* Blue Ridge to first send TMS a copy of the written proposal from King Features and "only then does the 30-day right of first refusal period begin to run." (TMS' July 30, 2007 letter, attached hereto as **Ex. 4**). On August 15, 2007, Blue Ridge complied with TMS' demand for a copy of the King Features' written proposal. Blue Ridge's August 15, 2007 letter contained both a cover letter dated August 8, 2007 from the President of King Features to Blue Ridge and an attachment titled "Proposal for Representation of SHOE Comic Strip 8/8/2007."  (**Ex. 5**).

The parties dispute whether the King Features' written proposal consists of just the attachment titled "Proposal for Representation of SHOE Comic Strip 8/8/2007" or includes the cover letter dated August 8, 2007. (See, Blue Ridge's Answer to TMS' Counterclaim at paragraphs 15 and 16). However, this dispute is not material to the

issues raised in this motion because regardless of the exact terms of the King Features' proposal, TMS admits in paragraph 35 of its Answer that TMS' 8/24/07 Proposed Syndication Agreement contained paragraph 4(c) and that the King Features' proposal did not contain any similar post termination payment provision.

Paragraph 4(c) states:

> In the event of termination, if Blue Ridge Salvage elects to continue syndication of the Feature in any form or through any means, Blue Ridge Salvage shall pay TMS, *as compensation for benefits that will inure to Blue Ridge Salvage as a result of Blue Ridge Salvage's association with TMS*, a monthly sum equal to fifty percent (50%) of the Feature's total Net Receipts for the month previous to such termination or non-renewal, Such payment to be made for a period of twelve (12) months after the date of termination. (Emphasis added.)

Incredibly, this post termination payment is due from Blue Ridge to TMS, *if for any reason*, Blue Ridge *ever* decides to continue syndication "in *any* form or through *any* means" with *any* entity other than TMS. (Emphasis added.) This payment is due even if it is **TMS who refuses** to enter into another syndication agreement with Blue Ridge under TMS' "<u>Rights of First Negotiation and First Refusal</u>." (See paragraph 5 of TMS' 8/24/07 Proposed Syndication Agreement, attached hereto as **Ex. 6**).

Not surprisingly, TMS' attorney claims in his of letter of October 18, 2007 that paragraph 4(c) is "immaterial." Obviously, TMS' attorney's statement does not establish the immateriality of this provision. The materiality of this provision is established as a matter of law by its own terms and by TMS' own arrogant view of the *value* of doing business with TMS.

TMS believes that its compensation under the agreement, including receiving 50% of the "Net Receipts" for deals entered into during the 20 year term is insufficient compensation to TMS for allowing Blue Ridge *the honor* of letting TMS exploit "Shoe."

8

TMS believes that *the value of the honor granted* to Blue Ridge by TMS, is approximately equal to the value of the compensation Blue Ridge will have received in the last year of the agreement. (See paragraph 3(b) and 4(c) of TMS' 8/24/07 Proposed Syndication Agreement, attached hereto as **Ex. 6**). Thus, under TMS' 8/24/07 Proposed Syndication Agreement, Blue Ridge would in effect only receive approximately 19 years of compensation, not the 20 years provided for in any version of the King Features' proposal.

Clearly, paragraph 4(c) is material. In responding to an offer, deviations in price are always material. See, D'Agostino v. Bank of Ravenswood, 205 Ill.App.3d 898, 902, 563 N.E.2d 886, 889 (1st Dist. 1990) (Attempted acceptance changed price from $230,000 to $235,000 and was not valid acceptance but a counteroffer); See also, Venture Associates Corp., 987 F.2d at 433 (Holding that where duty to negotiate in good faith exits, changing negotiated price can constitute bad faith). Accordingly, TMS failed to exercise its claimed right of first refusal when it included paragraph 4(c) in its 8/24/07 Proposed Syndication Agreement.

Additionally, TMS' attorney's letter of October 18, 2007 seeking to remove paragraph 4(c) could not cure TMS' failure. This letter was well beyond the 30-day period of TMS' claimed right of first refusal, which began upon TMS' receipt of Blue Ridge's August 15, 2007 letter containing the copy of the written King Features' proposal demanded by TMS.

TMS can be expected to argue that Blue Ridge's conduct breached the implied duty of good faith and fair dealing and that this prevents this Court from granting the instant motion. (See TMS' Affirmative Defense in its Answer). Such an argument fails.

In Illinois, the implied duty of good faith and fair dealing does not create an independent cause of action and is not an independent source of duties or obligations under a contract.  APS Sports Collectibles, Inc. v. Sports Time, Inc., 299 F.3d 624, 628 (7th Cir. 2002) (relying on Illinois Supreme court's decision in Voyles v. Sandia Mortgage Corp., 196 Ill.2d 288, 751 N.E.2d 1126 (2001)).  It is merely a guide to construction of the *explicit* terms of the contract and is designed to limit the arbitrary and unreasonable exercise of discretion granted to a party by an *explicit* term of the contract. Id; See also, Trading Technologies, Inc. v. Refco Group, Ltd, 2006 WL 794766 at pp. *2-*3 (N.D. Ill. 2006, Anderson, J.) (Attached hereto as **Ex. 10**).

Blue Ridge had no explicit duty or obligation under the 1995 Syndication Agreement to notify TMS that TMS' attempted exercise of its claimed right of first refusal was defective.  Blue Ridge did exactly what it was required to do under paragraph 5 of the 1995 Syndication Agreement and exactly what TMS repeatedly demanded.  Blue Ridge sent TMS a copy of a written proposal Blue Ridge had received from King Features.  At that point, Blue Ridge's only remaining obligation was to wait 30 days to see if TMS accepted the offer by matching the King Features' proposal.  See e.g., PSI Energy, Inc. v. Exxon Coal USA, Inc., 17 F.3d 969 (7th Cir (Ind.) 1994) ("obligation to negotiate in 'good faith' nixes trickery and certain forms of obduracy, (citation omitted), but does not require one side in negotiations to reveal its bargaining strategy or its reserve price, to disclose every tidbit that would be of use to the other side, or to refrain from taking advantage of its opportunities.")

10

## IV. **CONCLSUSION.**

The admissions in the pleadings, even when considered most favorably to TMS, establish as a matter of law that: (1) TMS did not match any alleged version of the King Features' proposal but counteroffered by including paragraph 4(c) in its executed new syndication agreement sent to Blue Ridge; (2) Blue Ridge did not accept TMS' counteroffer; (3) TMS' October 18, 2007 letter removing paragraph 4(c) was beyond the 30-day time for acceptance; and (4), Blue Ridge is free to enter into the agreement proposed by King Features.

For the forgoing reasons, Blue Ridge respectfully requests that this Court grant its motion and enter judgment in its favor on Blue Ridge's Compliant for Declaratory relief and in Blue Ridge's favor on TMS' Counterclaim for Declaratory and Injunctive Relief.

Respectfully submitted,
Blue Ridge Salvage Company, Inc.

/s/ Kevin B. Salam
Its attorney.

Kevin B. Salam
**Wolf Holland & Solovy, LLP**
40 Skokie Blvd., Ste. 105
Northbrook, IL 60062
224-330-1717 (Tel.)
224-330-1715 (Fax)