# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BLUE RIDGE SALVAGE COMPANY, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07 C 6497 |
| | ) | District Judge Norgle |
| TRIBUNE MEDIA SERVICES, INC., | ) | Magistrate Judge Mason |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S FIRST SET OF**
**INTERROGATORIES TO PLAINTIFF**

Defendant Tribune Media Services, Inc. ("TMS"), by and through its undersigned counsel and pursuant to the provisions of Fed. R. Civ. P. 33, hereby requires answers by Plaintiff Blue Ridge Salvage Company, Inc. ("Blue Ridge") to the following interrogatories, in accordance with the definitions and instructions set forth below, within 14 days of service hereof if the Court shortens the time for Blue Ridge to answer (otherwise the period shall be 30 days).

**Definitions**

1. "Blue Ridge" shall mean Blue Ridge Salvage Company, Inc., the Plaintiff herein, including its present and former directors, officers, employees, and agents, as well as all other persons acting or purporting to act on its behalf.

2. "TMS" shall mean Tribune Media Services, Inc., the defendant herein.

3. "King Features" shall mean King Features Syndicate, Inc., as well as the King Features Unit of the Hearst Corporation, including its present and former directors,

officers, employees, and agents, as well as all other persons or entities acting or purporting to act on its behalf.

4.    "Agreement" shall mean the Syndication Agreement dated August 25, 1995 between Blue Ridge and TMS.

5.    "Shoe" shall mean the Shoe cartoon feature.

6.    "ROFR" shall mean the right of first refusal contained in Paragraph 5(b) of the Agreement.

7.    "Complaint" means Plaintiff's Complaint in this action.

8.    "And" shall mean and/or.

9.    "Or" shall mean and/or.

10.    "Including" means including, but not limited to.

11.    "Document" or "document" or "documents" include, without limitation, and without regard to the form or manner of recording, any e-mail or other electronic communication, transcript, report, memorandum, record, letter, telegram, wire, overnight letter, pamphlet, brochure, book, minutes, microfilm, videotape, instruction manual, telephone log, procedural guideline, microfiche, invoice, calendar, appointment book, note, computer printout, business card and/or other writing whether printed, handwritten or otherwise and whether an original, draft or copy, without regard to the form of matter of recording. "Document" or "document" or "documents" also include any and all files from any personal computer, notebook or laptop computer, file server, minicomputer, main-frame computer, and/or other storage device or medium, including but not limited to, hard disk drives or backup or archival tapes (whether stored on-site or at an off-site storage facility). This definition encompasses all forms and manifestations of electronically stored and/or

retrieved electronic information, including but not limited to e-mail. All responsive files which are still on the storage media, regardless of whether they are identified as "erased" or "erased but recoverable," are to be included.

12.    "Communication" or "correspondence" refers to any oral, written, electronic, and/or other transmittal of words, thoughts, ideas and/or images between or among persons and/or groups of persons, whether in person, by letter, by telephone, through computers and/or other electronic devices or by any other means.

13.    When referring to a document, "identify" means to describe, to the extent known, the (i) type of document; (ii) general subject matter of the document; (iii) date of the document (or approximate time of preparation); (iv) length of the document; (v) authors, addressee(s) and recipient(s) of the document; (vi) the file from which it was drawn; and (vii) the custodian of the original and all copies, and anything else necessary to enable a request for production to be based on the answer.

14.    The term "identify" with respect to a person means to state the full name of each person, his/her present or last known home, business address, telephone number, current employer, and job title and/or responsibilities.

### Instructions

1.    Unless otherwise stated, the period of these Interrogatories is the inception of Blue Ridge's relationship with TMS through the present.

2.    Blue Ridge is under an obligation to supplement its answers to these interrogatories by disclosing any additional facts subsequently learned by Blue Ridge.

## Interrogatories

1.      Identify all of the people employed by or acting on behalf of Blue Ridge who communicated on or after January 1, 2000, with anyone employed by or acting on behalf of King Features with respect to the possible syndication or licensing of, and ancillary rights pertaining to, Shoe.

2.      Identify all of the people employed by or acting on behalf of King Features who communicated on or after January 1, 2000, with anyone employed by or acting on behalf of Blue Ridge with respect to the possible syndication or licensing of, and ancillary rights pertaining to, Shoe.

3.      Identify all of the people employed by or acting on behalf of Blue Ridge who communicated on or after January 1, 2000, with anyone employed by or acting on behalf of TMS with respect to the ROFR.

4.      State the first date that Blue Ridge and King Features communicated about Shoe.

5.      Identify by date all proposals made by King Features to Blue Ridge, and all proposals made by Blue Ridge to King Features, to syndicate Shoe. With respect to each such proposal, state whether the proposal was oral or written; if oral, identify all those who communicated about the proposal, and describe the content of each such proposal, including all of the terms therein; if written, identify the documents reflecting each such proposal.

6.      State with particularity the basis (including all factual and legal grounds) for Blue Ridge's allegation in Paragraph 13 of the Complaint that "Paragraph 12 of

the Syndication Agreement, titled 'Death' provides for the termination of the Syndication Agreement upon the death of Jeff MacNelly."

7.    State with particularity the basis (including all factual and legal grounds) for Blue Ridge's allegation in Paragraph 16 of the Complaint that "[t]he September 20, 2000 letter agreement recognized that the Syndication Agreement terminated by its own terms upon the death of Jeff MacNelly."

8.    Identify the date on which Blue Ridge first sent TMS a "bona fide offer" as required by Paragraph 5(b) of the Agreement.

9.    Identify each expert witness whose testimony Blue Ridge intends to present in this case. With respect to each expert witness, and in accordance with Fed. R. Civ. P. 26(a)(2)(B), the disclosure shall be accompanied by a written report, prepared and signed by the witness. The report must contain:

(i)    a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii)    the data or other information considered by the witness in forming them;

(iii)    any exhibits that will be used to summarize or support them;

(iv)    the witness's qualifications, including a list of all publications authored in the previous ten years;

(v)    a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition; and

(vi)    a statement of the compensation to be paid for the study and testimony in the case.

10.    If Blue Ridge denies in whole or in part any of Defendant's First Set of Requests for Admission to Plaintiff, explain with particularity the basis (including all factual and legal grounds) for each such denial.

Dated:  February 1, 2008

TRIBUNE MEDIA SERVICES, INC.

By: _____

One of Its Attorneys

Frederic R. Klein
Chad A. Blumenfield
Kerry K. Donovan
GOLDBERG KOHN BELL BLACK
  ROSENBLOOM & MORITZ, LTD.
55 East Monroe Street
Suite 3300
Chicago, Illinois  60603
(312) 201-4000

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that on February 1, 2008, she caused a copy of the foregoing **DEFENDANT'S FIRST SET OF INTERROGATORIES TO PLAINTIFF** to be served via email and U.S. mail upon:

Kevin B. Salam, Esq.
Wolf Holland & Solovy, LLP
40 Skokie Blvd., Ste. 105
Northbrook, IL 60062

Kerry K. Donovan

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BLUE RIDGE SALVAGE COMPANY, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07 C 6497 |
| | ) | District Judge Norgle |
| TRIBUNE MEDIA SERVICES, INC., | ) | Magistrate Judge Mason |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S FIRST SET OF DOCUMENT REQUESTS TO PLAINTIFF

Defendant Tribune Media Services, Inc. ("TMS"), by and through its undersigned counsel and pursuant to Fed. R. Civ. P. 34, hereby requests that Plaintiff Blue Ridge Salvage Company, Inc. ("Blue Ridge") respond and produce the documents described below, in accordance with the definitions and instructions set forth below, within 14 days of service hereof if the Court shortens the time for Blue Ridge to respond (otherwise the period shall be 30 days).

### Definitions

1.      "Blue Ridge" shall mean Blue Ridge Salvage Company, Inc., the Plaintiff herein, including its present and former directors, officers, employees, and agents, as well as all other persona acting or purporting to act on its behalf.

2.      "TMS" shall mean Tribune Media Services, Inc., the defendant herein.

3.      "King Features" shall mean King Features Syndicate, Inc., as well as the King Features Unit of the Hearst Corporation, including its present and former directors, officers, employees, and agents, as well as all other persona acting or purporting to act on its behalf.

4.    "Agreement" shall mean the Syndication Agreement dated August 25, 1995 between Blue Ridge and TMS.

5.    "Shoe" shall mean the Shoe cartoon feature.

6.    "ROFR" shall mean the right of first refusal contained in Paragraph 5(b) of the Agreement.

7.    "Document" or "document" or "documents" include, without limitation, and without regard to the form or manner of recording, any e-mail or other electronic communication, transcript, report, memorandum, record, letter, telegram, wire, overnight letter, pamphlet, brochure, book, minutes, microfilm, videotape, instruction manual, telephone log, procedural guideline, microfiche, invoice, calendar, appointment book, note, computer printout, business card and/or other writing whether printed, handwritten or otherwise and whether an original, draft or copy, without regard to the form of matter of recording.  "Document" or "document" or "documents" also include any and all files from any personal computer, notebook or laptop computer, file server, minicomputer, main-frame computer, and/or other storage device or medium, including but not limited to, hard disk drives or backup or archival tapes (whether stored on-site or at an off-site storage facility). This definition encompasses all forms and manifestations of electronically stored and/or retrieved electronic information, including but not limited to e-mail.  All responsive files which are still on the storage media, regardless of whether they are identified as "erased" or "erased but recoverable," are to be included.

### Instructions

1.    Unless otherwise stated, the period covered by these Document Requests is from the inception of Blue Ridge's relationship with TMS to the present.

-2-

2.    If any document requested herein was, but no longer is, in existence or in your possession, custody or control, identify: (i) the present or last known location of that document, (ii) the names and addresses of all persons with knowledge of the contents or nature of that document, and (iii) the circumstances surrounding your loss of possession, custody, or control of that document.

3.    Blue Ridge shall produce the original copy of each document requested herein, as well as any drafts, revisions, or copies of the same which bear any mark or notation not present on the original, and/or which otherwise differ from the original.

4.    All objections or responses to requests for production which fail or refuse to fully respond to any request on the ground of any claim of privilege of any kind whatsoever shall:

(b)    state the nature of the privilege;

(c)    state the facts relied upon in support of the claim of privilege;

(d)    identify all documents for which you claim a privilege and state the (i) date, (ii) author, (iii) recipient(s), and (iv) provide a brief description of the document's subject matter;

(e)    identify all persons having knowledge of any facts relating to the claim of privilege; and

(f)    identify all persons who have possession of the documents claimed to be privileged.

5.    These Document Requests shall be deemed continuing pursuant to Fed. R. Civ. P. 26 so as to require supplemental production if Blue Ridge or its counsel obtain further information between the time responses are served and the time of trial.

-3-

### Requests for Production

1.     Produce all documents, hard copy and electronic, which refer to the ROFR.

2.     Produce all documents, hard copy and electronic, which refer to the purported expiration of the ROFR upon the death of Jeffery K. MacNelly.

3.     Produce all documents, hard copy and electronic, which refer to TMS' purported inability to exercise the ROFR, and/or to meet the terms of the third-party offer with respect to Shoe.

4.     Produce all documents, hard copy and electronic, sent by Blue Ridge to King Features, or received by Blue Ridge from King Features, on or after January 1, 2000, pertaining to Shoe.

5.     Produce all documents, hard copy and electronic, sent by and between Susie MacNelly and Robert Vladem mentioning the possible syndication, licensing, or other uses of Shoe (i) after March 31, 2008, or (ii) by an entity other than TMS.

6.     Produce the King Features proposal submitted to TMS by Blue Ridge in accordance with Paragraph 5(b) of the Agreement.

7.     Produce all documents, hard copy and electronic, that relate to analyses, options, or contingencies concerning the syndication, licensing, or other uses of Shoe (i) after March 31, 2008, or (ii) by an entity other than TMS.

Dated: February 1, 2008

TRIBUNE MEDIA SERVICES, INC.

By: _____

-4-

One of Its Attorneys

Frederic R. Klein
Chad A. Blumenfield
Kerry K. Donovan
GOLDBERG KOHN BELL BLACK
  ROSENBLOOM & MORITZ, LTD.
55 East Monroe Street
Suite 3300
Chicago, Illinois  60603
(312) 201-4000

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that on February 1, 2008, she caused a copy of the foregoing **DEFENDANT'S FIRST SET OF DOCUMENT REQUESTS TO PLAINTIFF** to be served via email and U.S. mail upon:

> Kevin B. Salam, Esq.
> Wolf Holland & Solovy, LLP
> 40 Skokie Blvd., Ste. 105
> Northbrook, IL 60062

Kerry K. Donovan

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BLUE RIDGE SALVAGE COMPANY, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07 C 6497 |
| | ) | District Judge Norgle |
| TRIBUNE MEDIA SERVICES, INC., | ) | Magistrate Judge Mason |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S FIRST SET OF REQUESTS FOR ADMISSION TO PLAINTIFF

Defendant Tribune Media Services, Inc. ("TMS"), by and through its undersigned counsel, hereby propounds the following requests for admission to Plaintiff Blue Ridge Salvage Company, Inc. ("Blue Ridge") in accordance with Fed. R. Civ. P. 36 and the definitions and instructions set forth below, and seeks responses within 14 days of service hereof if the Court shortens the time for Blue Ridge to respond (otherwise the period shall be 30 days).

### Definitions and Instructions

1. "Blue Ridge" shall mean Blue Ridge Salvage Company, Inc., the Plaintiff herein, including its present and former directors, officers, employees, and agents, as well as all other persona acting or purporting to act on its behalf.

2. "TMS" shall mean Tribune Media Services, Inc., the defendant herein.

3. "King Features" shall mean King Features Syndicate, Inc., as well as the King Features Unit of the Hearst Corporation, including its present and former directors, officers, employees, and agents, as well as all other persona acting or purporting to act on its behalf.

4.    "Agreement" shall mean the Syndication Agreement dated August 25, 1995 between Blue Ridge and TMS.

5.    "Shoe" shall mean the Shoe cartoon feature.

6.    "ROFR" shall mean the right of first refusal contained in Paragraph 5(b) of the Agreement.

7.    "Complaint" means Plaintiff's Complaint in this action.

8.    All objections or responses to these Requests for Admission which fail or refuse to fully respond to any request on the ground of any claim of privilege of any kind whatsoever shall:

(a)    state the nature of the privilege;

(b)    state the facts relied upon in support of the claim of privilege; and

(c)    identify all persons having knowledge of any facts relating to the claim of privilege.

## Requests

1.    Admit that the Agreement refers to Blue Ridge and Jeffrey K. MacNelly collectively as "Artist."

2.    Admit that, at the time the Agreement was signed, Jeffrey K. MacNelly was not the only artist working on Shoe.

3.    Admit that under Paragraph 14 of the Agreement, the obligations of Artist set forth in Paragraph 5(b) of the Agreement survive any termination or cancellation of the Agreement.

4.    Admit that on September 20, 2000, TMS and Susie MacNelly, on behalf of the Estate of Jeffrey K. MacNelly, agreed that "Tribune Media Services and Blue Ridge Salvage will maintain their relationship under the Syndication Agreement."

5.    Admit that prior to August 15, 2007, Blue Ridge had never stated to TMS in writing or orally that it believed TMS had no ROFR.

6.    Admit that prior to August 15, 2007, Blue Ridge had never communicated to TMS in writing or orally that the ROFR had expired upon the death of Jeffrey K. MacNelly.

7.    Admit that, prior to the filing of the Complaint, Blue Ridge told King Features that TMS had a ROFR concerning Shoe.

8.    Admit that after the death of Jeffrey K. MacNelly, Blue Ridge continued to provide the Shoe feature to TMS.

9.    Admit that after the death of Jeffrey K. MacNelly, TMS continued to accept the Feature as created by the remaining Blue Ridge artists.

10.    Admit that after the death of Jeffrey K. MacNelly, TMS continued to pay Blue Ridge the royalty rate stated in the Agreement.

11.    Admit that on or about July 26, 2007, prior to submitting a third-party offer to TMS, Blue Ridge expressed the opinion to TMS that TMS would be unable to agree with many of the terms provided by the then unidentified third party offeror.

12.    Admit that Blue Ridge attempted to structure the offer of King Features in a way that would make it difficult for TMS to accept the offer.

13.    Admit that on or about August 15, 2007, Blue Ridge sent TMS a single page proposal prepared by King Features that contained eight terms and was entitled "Proposal for Representation of SHOE Comic Strip 8/8/07."

14.    Admit that on or about August 24, 2007, TMS sent Blue Ridge a letter in which it stated: "TMS hereby notifies Blue Ridge that it accepts the terms and conditions so specified in the bona fide offer that Blue Ridge received from King Features."

15.    Admit that in its August 8, 2007, letter to Blue Ridge, King Features did not state that the bona fide offer consisted of both its cover letter and the attached "Proposal for Representation of SHOE comic strip 8/8/2007."

16.    Admit that in its August 8, 2007, cover letter to Blue Ridge, King Features stated that its proposal was "attached" to its cover letter.

17.    Admit that Paragraph 5(b) of the Agreement did not require TMS to explain in writing how it expected to provide the syndication, licensing, or ancillary services for the Feature.

18.    Admit that in order to create a "binding agreement" between Blue Ridge and TMS, Paragraph 5(b) of the Agreement only required TMS to notify "Artist within thirty (30) days after the receipt of such notice that it accepts the terms and conditions so specified in the bona fide offer."

19.    Admit that the enclosed agreement in TMS' August 24, 2007, letter (the "Formal Agreement") encompassed all eight terms presented in King Features' "Proposal for Representation of SHOE Comic Strip 8/8/07."

20.    Admit that Blue Ridge never objected to TMS' August 24, 2007, letter, orally or in writing to TMS, prior to October 1, 2007.

21.    Admit that Blue Ridge intentionally waited to respond to TMS' August 24, 2007, letter until after the 30-day period provided for in Paragraph 5(b) of the Agreement had passed.

22.    Admit that after learning of Blue Ridge's dissatisfaction with Paragraph 4(c) of the Formal Agreement, TMS agreed to remove the provision.

23.    Admit that Blue Ridge did not intend for the King Features proposal sent to Blue Ridge on or about August 8, 2007, to comprise the entire agreement between King Features and Blue Ridge.

24.    Admit that after sending TMS the King Features proposal on or about August 15, 2007, in a September 11, 2007, email from Blue Ridge to King Features, Blue Ridge requested that King Features prepare and send Blue Ridge a contract in accordance with its proposal.

25.    Admit that the email attached hereto as Exhibit A is a true and correct copy of the September 11, 2007, email sent by Bob Vladem to T.R. Shepard on or about September 11, 2007.

26.    Admit that after August 8, 2007, Blue Ridge and King Features prepared a more detailed agreement (the "King Features Agreement") to govern a potential relationship between King Features and Blue Ridge.

27.    Admit that on September 18, 2007, Blue Ridge sent King Features a letter regarding the "Syndication Agreement between King Features and the Blue Ridge Salvage Company regarding the comic feature, SHOE," attached to which was the King Features Agreement.

28.    Admit that the letter and King Features Agreement attached hereto as Exhibit B are a true and correct copy of the September 18, 2007, letter and enclosed King Features Agreement sent by Audra Kujawski to Bob Vladem on or about September 18, 2007.

29.    Admit that the September 18, 2007, letter from Blue Ridge to King Features requested King Features to sign the King Features Agreement and to return it to Blue Ridge.

30.    Admit that in an August 2, 2007, email from Blue Ridge to King Features, Blue Ridge stated, in part, that "we will need to get a written letter of intent (offer) incorporating all of the terms listed below so we can make it clear to TMS that they will not be able to exercise a right of first refusal."

31.    Admit that the email attached hereto as Exhibit C is a true and correct copy of the August 2, 2007, email sent by Bob Vladem to T.R. Shepard on or about August 2, 2007.

32.    Admit that Paragraph 3 of the King Features Agreement governed "Outstanding Agreements on Termination."

33.    Admit that Paragraph 3 was a material term of the King Features Agreement.

34.    Admit that Paragraph 3 of the King Features Agreement was a material variation from the terms contained in the King Features Proposal sent to TMS on or about August 15, 2007.

35.    Admit that Blue Ridge agreed to grant a "right of first negotiation" to King Features in Paragraph 11 of the King Features Agreement.

36.    Admit that Paragraph 11 of the King Features Agreement provided for "matching rights," and required King Features to match the terms and conditions contained in a bona fide offer from a third party in order to exercise these matching rights.

37.     Admit that Blue Ridge and King Features never signed an agreement for Shoe to begin after March 31, 2008.

38.     Admit that Blue Ridge never tendered to TMS any contract to be entered into by Blue Ridge and King Features for Shoe.

39.     Admit that as of and since July 1, 2007, Blue Ridge had not wanted to be a party to an agreement with TMS regarding Shoe after March 31, 2008.

40.     Admit that it was Blue Ridge's intention to deny TMS the ability to exercise any ROFR with respect to Shoe.

Dated:  February 1, 2008

TRIBUNE MEDIA SERVICES, INC.

By: _____

One of Its Attorneys

Frederic R. Klein
Chad A. Blumenfield
Kerry K. Donovan
GOLDBERG KOHN BELL BLACK
  ROSENBLOOM & MORITZ, LTD.
55 East Monroe Street
Suite 3300
Chicago, Illinois  60603
(312) 201-4000

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that on February 1, 2008, she caused a copy of the foregoing **DEFENDANT'S FIRST SET OF REQUESTS FOR ADMISSION TO PLAINTIFF** to be served via email and U.S. mail upon:

Kevin B. Salam, Esq.
Wolf Holland & Solovy, LLP
40 Skokie Blvd., Ste. 105
Northbrook, IL 60062

Kerry K. Donovan