

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| BLUE RIDGE SALVAGE COMPANY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 07 C 6497 |
| v. | ) | District Judge Norgle |
| | ) | Magistrate Judge Mason |
| TRIBUNE MEDIA SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

Defendant/Counterplaintiff Tribune Media Services, Inc. ("TMS"), by its undersigned counsel, hereby respectfully submits its Memorandum of Law in Opposition to the Motion for Judgment on the Pleadings filed by Plaintiff/Counterdefendant Blue Ridge Salvage Company, Inc. ("Blue Ridge").

I.    **Introduction**

On August 25, 1995, TMS and Blue Ridge entered into a written agreement to syndicate the "Shoe" comic strip ("Shoe" or the "Feature"). That agreement had an expiration date of March 31, 2008, but also granted TMS a right of first refusal to enter into a new agreement if Blue Ridge presented a proposal from another entity to syndicate Shoe.

During July 2007, Blue Ridge asked if TMS actually wanted to enter into a new agreement to begin after March 31, 2008. When TMS said "yes," Blue Ridge responded that it actually did not wish to continue to do business with TMS. Shortly thereafter, Blue Ridge described a <u>five-point</u> proposal it had received from a then-unidentified entity to syndicate Shoe, and stated that Blue Ridge did not believe that TMS could match that

proposal.  TMS, however, accepted all five terms.  In August 2007, Blue Ridge forwarded an eight-point proposal from a now-identified entity, and opined that TMS would not want to meet those terms and conditions.  TMS, however, accepted all eight.  Frustrated that TMS had accepted all proposed terms (five and then eight), Blue Ridge let some time pass, and then: (a) denied that TMS actually had any right of first refusal at all, (b) denied that TMS had effectively exercised that right even if it existed, and (c) filed suit seeking a declaration that TMS either had no such right or, if it did, then TMS' acceptance was not effective.

Now, Blue Ridge has filed a Motion for Judgment on the Pleadings ("Motion") under Fed. R. Civ. P. 12(c), despite the existence of numerous material and genuine disputed issues of fact set forth in the pleadings and the exhibits incorporated by reference therein.  In filing this Rule 12(c) Motion, Blue Ridge has ignored both the import of the many disputed facts and the procedural posture of this case.  Moreover, Blue Ridge has fundamentally misconstrued the applicable case law.  For all of these reasons, the Motion should be denied.

## II.     Standard of Review

A motion for judgment on the pleadings under Rule 12(c) is decided under the same standard as a motion to dismiss under Rule 12(b)(6).  Flenner v. Sheahan, 107 F.3d 459, 461 (7th Cir. 1997).  A motion for judgment on the pleadings may not be granted "unless it appears beyond doubt that the [nonmovant] can prove no facts sufficient to support his claim for relief."  Id.  Thus, judgment on the pleadings is only appropriate where no genuine issues of material fact remain to be resolved.  Alexander v. City of Chicago, 994 F.2d 333, 336 (7th Cir. 1993).

The Court must view all allegations in the light most favorable to the nonmoving party (here TMS) so that all denials and allegations made by TMS in its Answer,

Affirmative Defense, and Counterclaim are, for purposes of this Motion, deemed admitted. Flenner, 107 F.3d at 461. Moreover, the Court must consider all of the pleadings, as well as all of the documents attached to and incorporated into those pleadings. See Fed. R. Civ. P. 10 ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

**III.   Facts**

For the purposes of this Motion, the following is an accurate account of the events pertaining to this dispute, viewing all disputed allegations in TMS' favor.[1]

**A.   TMS Makes Clear to Blue Ridge That TMS Will Exercise Its Right of First Refusal.**

On August 25, 1995, Blue Ridge and TMS entered into a "Syndication Agreement" (the "Agreement") to govern the relationship between them with respect to the syndication of Shoe. See Agreement, attached to TMS' Answer and Counterclaim, Ex. A. Paragraph 5(b) of the Agreement grants TMS a right of first refusal with regard to the rights to syndicate and distribute the Feature upon expiration of the Agreement:

> If Artist desires to grant to anyone the rights to syndicate and distribute the Feature following the expiration of the term of this Agreement, then Artist shall first offer to TMS the right to match a bona fide offer received by Artist for the Feature. If TMS notifies Artist within thirty (30) days after the receipt of such notice that it accepts the terms and conditions so specified in the bona fide offer to Artist, the notice from Artist and the acceptance by TMS shall constitute a binding agreement.

That right of first refusal was valid and enforceable through the entire term of the Agreement. See TMS' Answer and Counterclaim at page 5; July 19 TMS letter, attached to

---

[1]   A list of the most important disputed material allegations between the parties, derived from the pleadings and the exhibits attached thereto, is appended as Exhibit A.

TMS' Answer and Counterclaim, Ex. C.  (All relevant letters were sent in 2007.  Dates mentioned in this Memorandum of Law refer to 2007 unless otherwise specified.)

In accordance with Paragraph 4(a), the Agreement was due to expire on March 31, 2008.  Blue Ridge, however, had grown dissatisfied with TMS, and in a letter dated July 16, indicated its intention to seek a new syndication agreement with a then-unidentified party.  See July 16 Blue Ridge letter, attached to TMS' Answer and Counterclaim, Ex. B.  Blue Ridge went on to state that it had received a five-point proposal from an unidentified entity to syndicate Shoe after the Agreement expired.  Id.

TMS responded by informing Blue Ridge that it valued the right of first refusal and stated in unequivocal terms that it intended to exercise it.  See TMS' Answer and Counterclaim, ¶ 11 (responding to a query about whether TMS wished to continue its relationship with Blue Ridge by stating:  "The answer is yes.").  From that point forward, TMS repeatedly made very clear that it was exercising its right of first refusal under the Agreement.  See TMS' Counterclaim, ¶¶ 11, 14, 17, 19; July 19 TMS letter, attached to TMS' Answer and Counterclaim, Ex. C; July 30 TMS letter, attached to TMS' Answer and Counterclaim, Ex. E; August 24 TMS letter, attached to TMS' Answer and Counterclaim, Ex. I; and October 18 TMS letter, attached to TMS' Answer and Counterclaim.

Nevertheless, Blue Ridge expressed "our opinion that Tribune Media Services, Inc. will be unable to agree with many of" the terms proposed by a then unidentified entity that had supposedly indicated an interest in syndicating Shoe after March 31, 2008.  See July 26 Blue Ridge letter, attached to TMS' Answer and Counterclaim, Ex. D.  TMS responded by asking to see the actual written proposal from the other entity, which Blue Ridge had failed to reveal.  See July 30 TMS letter, attached to TMS' Answer and

Counterclaim, Ex. E.  Ten days later, Blue Ridge still had not responded.  To make certain that it was protecting its rights under the Agreement, on August 9 – 24 days after Blue Ridge sent its July 16 letter indicating its intention to seek a new agreement based on five specific business terms – TMS sent a letter to Blue Ridge stating:  "TMS today accepts all five terms offered in Mr. Vladem's July 16, 2007 letter."  <u>See</u> August 9 TMS letter, attached to TMS' Answer and Counterclaim, Ex. F.

**B.     Blue Ridge Sends King Features' Proposal to TMS, and TMS Accepts.**

Six days after TMS had accepted the <u>five</u> terms, Blue Ridge sent a letter to TMS with an attachment entitled "Proposal for Representation of SHOE Comic Strip 8/8/07" from King Features Syndicate, Inc. ("King Features") with <u>eight</u> terms.  <u>See</u> August 15 Blue Ridge letter, attached to TMS' Answer and Counterclaim, Ex. G; August 24 TMS letter, attached to TMS' Answer and Counterclaim, Ex. I.  Blue Ridge also included a cover letter from King Features puffing about its "robust … syndication and licensing awareness" and "syndication and licensing sales prowess."  Blue Ridge (but not King Features) contended that this marketing pitch was part of King Features' contract proposal.  For purposes of this Motion, however, Blue Ridge has admitted that the cover letter did not constitute part of King Features' Proposal, which had stated only **eight** specific terms that would govern the 20-year relationship.  <u>See</u> TMS' Counterclaim, ¶¶ 17-18;  October 18 TMS letter, attached to TMS' Answer and Counterclaim, Ex. K.  <u>See</u> <u>also</u> August 8 King Features' letter, attached to TMS' Answer and Counterclaim, Ex. G (King Features' cover letter stated: "<u>Attached</u> is the proposal for the representation of the Shoe comic strip") (emphasis added).

Blue Ridge transmitted the King Features eight-point Proposal in a manner which made it clear that Blue Ridge was attempting to discourage TMS from exercising its

right of first refusal:  "To the extent Tribune Media believes it can meet each of these terms, I must request that you explain in writing how Tribune Media expects to provide the same services to my client as contemplated under the King Features Proposal."  <u>See</u> August 15 Blue Ridge letter, attached to TMS' Answer and Counterclaim, Ex. G.  Paragraph 5(b) of the Agreement, however, did not require TMS to explain, to pitch, to sell, to make out its case, or to prove to Blue Ridge that TMS was worthy to syndicate Shoe.  Instead, Paragraph 5(b) of the Agreement set forth a straightforward right of first refusal if TMS accepted the terms and conditions of the non-party offer.

On August 24 – just nine days after Blue Ridge transmitted the King Features Proposal – TMS informed Blue Ridge that it expressly invoked the right of first refusal under the Agreement, now in response to King Features' eight-point Proposal.  <u>See</u> August 24 TMS letter, attached to TMS' Answer and Counterclaim, Ex. I:  "Pursuant to Section 5(b) of the Syndication Agreement between TMS and your client dated August 25, 1995, <u>TMS hereby notifies Blue Ridge that it accepts</u> the terms and conditions so specified in the bona fide offer that Blue Ridge received from King Features."  <u>Id.</u> (emphasis added).  Indeed, the subject line of the letter states:  "Acceptance of Offer to Artist and Response to Your Letter of August 15, 2007."  <u>Id.</u>  TMS could not have been more clear:  it had accepted the King Features Proposal and exercised its right of first refusal.  This created a binding agreement between Blue Ridge and TMS.  <u>See</u> Agreement, ¶ 5(b), attached to TMS' Answer and Counterclaim, Ex. A ("If TMS notifies Artist within thirty (30) days after the receipt of such notice that it accepts the terms and conditions so specified in the bona fide offer to Artist, the notice from Artist and the acceptance by TMS shall constitute a binding agreement.").

TMS thus timely and effectively exercised its right of first refusal, accepting all eight terms proposed by King Features.  TMS also drafted a more formal document that incorporated every one of these eight terms (the "Formal Agreement").  See August 24 TMS letter, attached to TMS' Answer and Counterclaim, Ex. I.  The reason for the Formal Agreement was that the August 25, 1995 Agreement entered into by Blue Ridge and TMS was not a five-point or eight-point "term sheet."  Instead, it was a formal 19-page Agreement executed by the parties that covered a variety of typical issues that might arise over the course of the 1995-2008 relationship.  The Formal Agreement sent by TMS to Blue Ridge on August 24, incorporating all eight of the terms and conditions in King Features' Proposal, was likewise a formal 14-page document covering a variety of similar issues.  One aspect of the Formal Agreement, Paragraph 4(c), was an immaterial provision discussing the rights of the parties after the termination of the Formal Agreement 20 years later, in 2028.  See id; TMS' Answer and Counterclaim at pages 11, 12.  TMS subsequently removed that immaterial provision after Blue Ridge objected.  See October 18 TMS letter, attached to TMS' Answer and Counterclaim, Ex. K.

Blue Ridge did not respond for more than one month after receiving TMS' August 24 letter of acceptance.  Instead of promptly notifying TMS about any objection Blue Ridge had to TMS' exercise of the right of first refusal, Blue Ridge deferred its purported rejection of TMS' acceptance of King Features' eight-point Proposal until after the 30-day period had run.  See October 1 Blue Ridge letter, attached to TMS' Answer and Counterclaim, Ex. J.  Blue Ridge's delay is of no consequence because TMS had already effectively exercised its right in the August 24 letter.  Blue Ridge's delay in responding, however, is just some of the evidence of bad faith on the part of Blue Ridge, and its

consistent efforts to discourage, frustrate, interfere with, and deny TMS' exercise of valid

contract rights.  <u>See</u> TMS' Answer and Counterclaim, Affirmative Defense, at ¶¶ 1-3.

IV.    <u>Argument</u>

    A.    **The Existence of Genuine Issues of Material Fact Requires the Denial of Blue Ridge's Rule 12(c) Motion.**

        In its Motion, Blue Ridge requests that this Court enter a final judgment against TMS based on the sole contention that TMS failed to effectively exercise its right of first refusal under Paragraph 5(b) of the Agreement.  Blue Ridge admits that TMS matched all of the terms and conditions stated in King Features' eight-point Proposal.  So instead, Blue Ridge argues that TMS also tendered the more Formal Agreement setting forth the same eight terms and conditions, as well as other typical provisions largely resembling those found in the August 25, 1995 Agreement between Blue Ridge and TMS.  <u>See</u> Blue Ridge's Brief in Support of Motion for Judgment on the Pleadings ("Brief") at 3.

        In asking for the entry of a final judgment at this time, Blue Ridge asks this Court to ignore the many factual disputes that are central to the resolution of this dispute.  For example, the pleadings and the exhibits thereto, which are incorporated by reference, reveal that the parties dispute at least the following genuine issues of material fact:

      (1)    Was the King Features Proposal to Blue Ridge the eight-point sheet of terms and conditions, which King Features called its "Proposal," or did it also include King Features' cover letter puffing about King Features' track record and capabilities to perform in the future?

      (2)    Did the Formal Agreement attached to TMS' August 24 "Acceptance of Offer" incorporate all eight of those terms and conditions into a more formal agreement that would govern the parties' relationship for the next 20 years, just as the Agreement had governed their relationship for the previous 12 years?

      (3)    Was Paragraph 4(c) of the Formal Agreement "material"?

(4)    Did Blue Ridge discourage, plan, and work to prevent TMS from being able to exercise its right of first refusal, thereby acting in bad faith to deny TMS the ability to enforce its contractual rights?

Each of these factual questions and disputes bears upon the case that this Court is being asked to resolve in a vacuum due to Blue Ridge's Motion.  In light of Rule 12(c)'s mandate that all factual disputes must be resolved in TMS' favor, Blue Ridge's Motion should be denied.

**B.    TMS Properly Exercised Its Right of First Refusal.**

Pursuant to Paragraph 14(a) of the Agreement, Illinois law governs this dispute.  Under Illinois law, a party validly exercises a right of first refusal if it accepts all of the material terms of the proposal.  See Dunkin Donuts Inc. v. NSJ, Inc., 889 F. Supp. 1074 (N.D. Ill. 1995) (Norgle, J.) (holder of right of first refusal timely exercised its right when it complied with the terms of the agreement between the parties).  Because TMS did so here when it expressly accepted all eight terms and conditions proposed by King Features, the Motion must be denied, particularly given this procedural posture.  Blue Ridge's arguments to the contrary ignore the disputed facts.  Moreover, Blue Ridge conflates a series of doctrines derived from general contract law, and the rules governing options, in an attempt to avoid the law governing rights of first refusal.

**1.    TMS Validly Exercised Its Right of First Refusal by Accepting the King Features Proposal.**

In Vincent v. Doebert, 183 Ill. App.3d 1081, 539 N.E. 2d 856 (2nd Dist. 1989), the Illinois Appellate Court held that rights of first refusal are enforceable where the holder of the right accepts the material terms and conditions of the third party's proposal.  In that case, a holder of a right of first refusal tried to accept a third-party offer.  Id. at 1089, 861-62.  Attempting to back out of its contractual obligations, the grantor of the right of first

refusal argued that because the holder of the right had failed to match a $10 million personal guarantee that the third-party offeror had made, the holder had not effectively exercised its right. Id. at 1084, 858-59. The Appellate Court rejected that argument, and held that the offer to provide a personal guarantee and to secure it by a letter of credit was sufficient to meet the material terms and conditions of the third-party offer. Id. at 1089, 861-62. The court found that the $10 million guarantee provided by the third-party offeror was not a material or actual part of the offer, and therefore the failure to meet that aspect of the offer did not alter the effectiveness of the exercise of the right of first refusal. Id. at 1090-91, 862-63. See also Kellner v. Bartman, 250 Ill. App. 3d 1030, 1036, 620 N.E.2d 607, 611 (4th Dist. 1993) (rights of first refusal "are enforceable as long as the holder meets the material terms and conditions of the third party's offer").

In this case, TMS accepted every one of the eight terms and conditions stated in the King Features Proposal. This case therefore presents an even stronger set of facts supporting TMS' position than Vincent. Unlike Vincent, where the plaintiff did not accept all of the terms of the third-party offer, but still nevertheless properly exercised the right of first refusal, here TMS unequivocally accepted each of the eight terms and conditions of the King Features Proposal. See August 24 TMS letter, attached to TMS' Answer and Counterclaim, Ex. I ("TMS hereby notifies Blue Ridge that it accepts the terms and conditions so specified in the bona fide offer that Blue Ridge received from King Features").

### 2. Blue Ridge's Argument Based On TMS' Submission of an Immaterial Term Is Unavailing.

Blue Ridge admits that TMS accepted every one of the eight terms and conditions of the Proposal submitted by King Features. Indeed, TMS' acceptance was

phrased in clear and unmistakable terms, and is binding. Nevertheless, Blue Ridge attempts to nullify TMS' contract right by arguing that TMS proposed a new material term that vitiated the right of first refusal.

Blue Ridge's Motion ignores the text of TMS' August 24 letter ("TMS … accepts the terms and conditions … received from King Features"), and characterizes TMS' response as proposing a single additional term. Paragraph 4(c) of the Formal Agreement, however, merely represented TMS' attempt to provide for the effects of a termination 20 years later, just as many other sections in the Formal Agreement would govern the parties' agreement going forward. Far from a counteroffer, TMS expressly agreed in its August 24 letter to accept **ALL** of the terms and conditions of the King Features Proposal, and went on to submit a Formal Agreement as a practical means to fully document the relationship between Blue Ridge and TMS.

Closing its eyes to the facts, Blue Ridge ignores everything that TMS stated in the August 24 letter, including the following: "In light of the foregoing and to memorialize the agreement, we have attached a signed Syndication Agreement that we believe incorporates all of the terms of King Features' offer. Please contact us if you have any questions and to coordinate signatures on the document." Accordingly, TMS made clear that the Formal Agreement was simply a follow-on to the agreement that had already been reached between the parties, and specifically asked Blue Ridge to contact TMS if, for example, Blue Ridge had questions or wanted to discuss the Formal Agreement document. Blue Ridge never did contact TMS.

Blue Ridge realizes that it cannot deny that TMS fully accepted King Features' eight-term Proposal, and merely provided additional provisions to flesh out the parties'

agreement in a customary manner.  Cf. Kellner v. Bartman, 250 Ill. App. 3d at 1035, 620 N.E. 2d at 610 ("Many terms and conditions of the sale upon the exercise of the right of first refusal may be supplied by implication or custom").  It therefore concocts a scenario where TMS made a counter-offer with a single additional term, and then directs its most vigorous rhetoric to arguing that the single provision it focuses on was "material."  See Brief at 8 ("The materiality of this provision is established as a matter of law by its own terms and by TMS' own arrogant view…"); id. at 9 ("Clearly, paragraph 4(c) is material").  Yet, even assuming *arguendo* that Blue Ridge's argument can be taken at face value, Blue Ridge cannot convert Paragraph 4(c) of the Formal Agreement into a material provision simply by willing it to be so.

First, TMS has denied that it was a material provision, and Blue Ridge has even alleged that TMS has claimed that the provision was "immaterial."  See Complaint, ¶ 39.  TMS' position must be accepted as true for purposes of this Motion.  Second, TMS' actions show that it did not view Paragraph 4(c) to be material because TMS removed it when Blue Ridge raised the issue.  See October 18 TMS Letter, attached to TMS' Answer and Counterclaim, Ex. K.  Third, whether a term is material is not a question of law, but a question of fact.  See Vincent, 183 Ill. App. 3d at 1089, 539 N.E. 2d at 862 (whether provision was a material part of the offer was a "disputed question of fact;" summary judgment against holder of right of first refusal reversed, and case remanded for further proceedings).  See also Comark Merchandising, Inc. v. Highland Group, Inc., 932 F.2d 1196, 1200 (7th Cir. 1991) (materiality "is a question of fact").  In the context of this Rule 12(c) Motion, it is undisputed that Paragraph 4(c) was immaterial.   Therefore, resolution of this issue is not appropriate at this procedural juncture.

3.    **Blue Ridge Improperly Attempts to Inject Other Inapplicable Elements of Contract Law into the Analysis.**

The case law governing rights of first refusal does not support Blue Ridge's argument, so it relies on less relevant case law discussing generalized contract concepts and cases involving options.  The Seventh Circuit, however, has recognized that rights of first refusal generally are not governed by the same rules that characterize the offer, acceptance, and consideration necessary for the formation of the typical bilateral contract.  In <u>Miller v. LeSea Broadcasting, Inc.</u>, 87 F.3d 224 (7th Cir. 1996) (construing Wisconsin law), the Court of Appeals noted that reliance on the "mirror-image" rule in the realm of rights of first refusal was "strained" because this so-called rule implicates only two parties, while rights of first refusal involve a third party.  <u>Id.</u> at 227.  Thus, Blue Ridge's reliance on this line of case law is misguided.

The facts (construed in TMS' favor) show that TMS accepted every term and condition in King Features' Proposal.  The facts also show that TMS merely suggested an immaterial provision which would be part of a Formal Agreement that would be quite similar to the 19-page Agreement signed by Blue Ridge and TMS on August 25, 1995.  Blue Ridge cites cases for the proposition that an acceptance that contains provisions different from the original offer is not valid, but is rather treated as a counteroffer.  <u>See</u> Brief at 6-7, citing <u>Venture Associates Corp. v. Zenith Data Systems Corp.</u>, 987 F.2d 429, 432 (7th Cir. 1993), and <u>Hicks Road Corp. v. Marathon Oil Corp.</u>, No. 93 C 3409, 1994 WL 327361, at *4 (N.D. Ill. July 6, 1994).  But neither of these cases prevents a party from exercising a right of first refusal by accepting every single proposed term, and then suggesting an additional provision

to clarify the parties' ongoing relationship following the acceptance. Indeed, these cases do not even involve rights of first refusal at all.

Blue Ridge also cites <u>WCC Funding Ltd. v. Gan International</u>, 871 F. Supp. 1017 (N.D. Ill. 1994), a case involving an options contract (involving only two parties) rather than a right of first refusal (involving three – here, Blue Ridge, TMS, and King Features). <u>See</u> Brief at 6-7. In that case, the court found that the defendant had failed to exercise the option properly because the parties' agreement required that specific steps be taken that the defendant failed to meet, including expressing its intention to accept in writing. <u>WCC Funding</u>, 871 F. Supp. at 1026. <u>WCC Funding</u>, however, does not establish any such requirement for a right of first refusal. Instead, it stands for the very different proposition that the holder of an option must comply with the procedural requirements of the agreement when exercising the option right.

In this case, TMS carefully and properly exercised its rights under Paragraph 5(b) of the Agreement, even as Blue Ridge worked to prevent it from doing so. After Blue Ridge declared its intention to seek out an offer from a third party, TMS repeatedly asked for a copy of a bona fide offer that it could accept. When Blue Ridge finally provided TMS with King Features' eight-point Proposal, TMS "accept[ed] the terms and conditions so specified in the bona fide offer that Blue Ridge received from King Features." This satisfied TMS' obligations under Paragraph 5(b) of the Agreement.

**C.     The Covenant of Good Faith and Fair Dealing Required Blue Ridge to Honor TMS' Acceptance of King Features' Proposal.**

TMS should also prevail for the independent reason that Blue Ridge has intentionally worked to discourage and to prevent TMS from exercising its right of first

refusal, thereby exhibiting the kind of bad faith that prevents it from challenging TMS' exercise of that right.  Blue Ridge may not prevail based on an alleged technical issue that Blue Ridge could easily have avoided had it acted in good faith.

In Illinois, every contract – including one with rights of first refusal – "contains an implied promise of good faith and fair dealing between the parties."  Kellner v. Bartman, 250 Ill. App. 3d at 1036, 620 N.E. 2d at 611.  The covenant means that "parties to a contract impliedly promise not to do anything which will destroy or injure the other party's right to receive the fruits of the contract."  Vincent, 183 Ill. App. 3d at 1090, 539 N.E. 2d at 862.

A party does not act in good faith when it attempts to prevent the holder of a right of first refusal from exercising that right.  In Vincent, for example, the court enforced a right of first refusal where a party acted in bad faith to prevent the exercise:  "It is apparent here that the owners did not act in good faith when they notified Vincent that he had to provide a $10 million guarantor to exercise his right of first refusal as it is clear that this term was not part of the intervenors' offer to purchase."  183 Ill. App. 3d at 1091, 539 N.E. 2d at 862.  See also Miller v. LeSea, 87 F.3d at 228 ("the grantor of the option may not act in bad faith, which in this context means may not, for the purpose of discouraging the exercise of the right, procure from the third party terms that the grantor knows are unacceptable to the holder of the right of first refusal").  For purposes of this Motion, Blue Ridge has admitted that the King Features' marketing cover letter was not part of the eight-point Proposal TMS was obligated to accept.  In accordance with Vincent and Miller v. LeSea, a genuine issue of material fact exists with respect to whether Blue Ridge operated in bad faith "for the purpose

of discouraging the exercise of the right" by demanding (after the fact) that TMS accept marketing hype that was not even part of King Features' eight-point Proposal.

Blue Ridge incorrectly asserts that it "did exactly what it was required to do under the 1995 Syndication Agreement." See Brief at 10. In truth, Blue Ridge has striven from the outset to thwart TMS from exercising its contractually-granted right of first refusal:

- In July, when Blue Ridge first informed TMS that it had received an offer, Blue Ridge stated: "It is our opinion that Tribune Media Services will be unable to agree with" the terms. Blue Ridge characterized the offer as containing only five terms, and refused to divulge the identity of the offering party.

- TMS responded promptly in unequivocal terms that it wished to exercise its right of first refusal, and requested a copy of the alleged offer. Yet Blue Ridge did not respond until after TMS explicitly stated that it accepted the five terms.

- In August, Blue Ridge provided a "Proposal for Representation of SHOE Comic Strip 8/8/07." First, this contradicted Blue Ridge's assertion that it had received such a proposal in July. Second, contrary to the statements in King Features' cover letter, which contained typical puffing about King Features' talents and accomplishments, Blue Ridge asserted that the cover letter itself was part of the proposal that TMS needed to match, even though King Features' self-described "Proposal" had eight terms on a single page.

- Blue Ridge then intentionally delayed responding for over a month after TMS' August 24 acceptance, consciously attempting to let the 30-day period lapse before voicing an objection to anything.

- Since that time, Blue Ridge has repeatedly refused to acknowledge TMS' acceptance of King Features' Proposal despite TMS' repeated and unambiguous communications stating acceptance.

None of these actions comports with Blue Ridge's responsibilities under the Agreement, and its obligation under the law to fulfill its contractual responsibilities in good faith. Instead, these actions were all efforts on the part of Blue Ridge to "destroy or injure [TMS'] right to receive the fruits of the contract." See Vincent, 183 Ill. App. 3d at 1090, 539 N.E. 2d at 862. Indeed, the facts which are deemed admitted establish that Blue Ridge

engaged in bad faith, and consistently attempted to discourage and prevent TMS from being able to exercise its contract rights.

In its strenuous efforts to avoid its contractual obligation to honor TMS' right of first refusal, Blue Ridge's Complaint stated two additional theories:  (a) When Jeff MacNelly died in 2000, TMS' right of first refusal under the Agreement lapsed; and (b) In September 2000, TMS wrote a letter to Blue Ridge acknowledging that the right of first refusal had expired.  See Complaint at ¶¶ 13, 15-18, Exhibit B.  Neither the Agreement nor the September 2000 letter, however, says any such thing; TMS has expressly denied the allegations, TMS' Answer and Counterclaim, at pages 4-6; and Blue Ridge did not even assert these positions until Summer 2007.  These two theories, now abandoned, show that Blue Ridge is willing to invent arguments out of whole cloth as part of its bad faith effort to renege on its contractual obligations.

The paper record makes it clear (even before a single witness has testified) that Blue Ridge continually played games of hide and seek, keepaway, and upping the ante – (a) trying to discourage TMS from pursuing its right of first refusal, (b) stating that it had received a five-point proposal from an unidentified entity, (c) then, after TMS accepted all five points, stating that it had received an eight-point Proposal from King Features, and (d) after TMS' acceptance of all eight terms and conditions, finally denying that TMS had any right of first refusal at all.

## V.    Conclusion

Blue Ridge seeks a final judgment on the pleadings despite the existence of numerous material and genuine disputed issues of fact contained in the pleadings and the exhibits incorporated therein by reference.  With all facts construed in TMS' favor under this

procedural posture, Blue Ridge cannot prevail.  Furthermore, under the relevant case law, TMS effectively exercised its right of first refusal despite Blue Ridge's breach of its duty to operate in good faith and to honor that right.  Therefore, Blue Ridge's Motion should be denied on procedural, substantive, and factual grounds.

Dated:  January 25, 2008

                                  Respectfully submitted,

                                  TRIBUNE MEDIA SERVICES, INC.

                                  By:  /s/ Frederic R. Klein
                                     One of Its Attorneys

Frederic R. Klein
Chad A. Blumenfield
Kerry K. Donovan
GOLDBERG KOHN BELL BLACK
  ROSENBLOOM & MORITZ, LTD.
55 East Monroe Street
Suite 3300
Chicago, Illinois  60603
(312) 201-4000

# EXHIBIT A

## Exhibit A

### Disputed Material Allegations

1. Whether the August 24 TMS letter in which TMS expressly agreed to accept the eight terms of the King Features Proposal was a timely and effective exercise of TMS' right of first refusal that created a binding agreement between Blue Ridge and TMS. See Complaint, ¶¶ 36, 38; TMS' Answer and Counterclaim at pages 11-12; Blue Ridge's Reply to Defendant's Counterclaim ("Reply") at page 8; Blue Ridge's Brief in Support of Motion for Judgment on the Pleadings ("Brief") at page 4; August 24 TMS letter, attached to TMS' Answer and Counterclaim, Ex. I; October 1 Blue Ridge letter, attached to TMS' Answer and Counterclaim, Ex. J; October 18 TMS letter, attached to TMS' Answer and Counterclaim, Ex. K.

2. Whether the "written proposal" from King Features consisted solely of the document entitled "Proposal for Representation of SHOE Comic Strip 8/8/07" submitted to Blue Ridge, or whether it also consisted of the cover letter accompanying the "Proposal" that contained a marketing pitch about King Features' track record and capabilities. See Complaint, ¶ 30; TMS' Answer and Counterclaim at page 9; August 15 Blue Ridge letter, attached to TMS' Answer and Counterclaim, Ex. G; October 1 Blue Ridge letter, attached to TMS' Answer and Counterclaim, Ex. J; October 18 TMS letter, attached to TMS' Answer and Counterclaim, Ex. G.

3. Whether Paragraph 4(c) of the Formal Agreement is an immaterial provision. See Complaint, ¶¶ 35, 39; TMS' Answer and Counterclaim at pages 11-12; Brief at pages 7-9; August 24 TMS letter, attached to TMS' Answer and Counterclaim, Ex. I; October 18 TMS letter, attached to TMS' Answer and Counterclaim, Ex. K.

4. Whether TMS' inclusion in its August 24 letter of the Formal Agreement with an immaterial provision altered TMS' acceptance of the King Features Proposal. See Complaint, ¶¶ 34-35; TMS' Answer and Counterclaim at pages 10-11; Brief at pages 4-5, 6-8; August 24 TMS letter, attached to TMS' Answer and Counterclaim, Ex. I; October 1 Blue Ridge letter, attached to TMS' Answer and Counterclaim, Ex. J; October 18 TMS letter, attached to TMS' Answer and Counterclaim, Ex. K.

5. Whether Blue Ridge acted in bad faith and attempted to discourage TMS from enforcing its contractual rights by working to prevent TMS from exercising its right of first refusal. See TMS' Answer and Counterclaim, Affirmative Defense, ¶¶ 1-3; Reply at page 10; Brief at pages 9-10; October 18 TMS letter, attached to TMS' Answer and Counterclaim, Ex. K.

6. Whether Paragraph 12 of the Agreement provides that the right of first refusal terminates upon the death of Jeffrey MacNelly. See Blue Ridge's Complaint for Declaratory Judgment ("Complaint"), ¶¶ 13, 26; TMS' Answer and Counterclaim at pages 4, 8; Agreement, ¶¶ 12, 14, attached to TMS' Answer and Counterclaim, Ex. A.

7. Whether TMS' right of first refusal was valid and enforceable throughout the term of
   the Agreement, or whether the September 20, 2000 TMS letter sent to Blue Ridge
   supplants the terms of the Agreement and nullifies TMS' right of first refusal. <u>See</u>
   Complaint, ¶¶ 14-16, 26-27; TMS' Answer and Counterclaim at pages 5-6, 8;
   September 20 TMS letter, attached to TMS' Answer and Counterclaim, Ex. H; August
   15 Blue Ridge letter, attached to TMS' Answer and Counterclaim, Ex. G; August 24
   TMS letter, attached to TMS' Answer and Counterclaim, Ex. I; October 18 TMS
   letter, attached to TMS' Answer and Counterclaim, Ex. K.