IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BLUE RIDGE SALVAGE COMPANY, INC., | ) ) ) | |
| Plaintiff-Counterdefendant, | ) | No. 07 C 6497 |
| vs. | ) ) | District Judge Norgle<br>Magistrate Judge Mason |
| TRIBUNE MEDIA SERVICES, INC. | ) ) ) | |
| Defendant-Counterplaintiff. | ) | |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT
OF MOTION FOR JUDGMENT ON THE PLEADINGS**

Now comes the Plaintiff-Counterdefendant, Blue Ridge Salvage Company, Inc. ("Blue Ridge"), by its attorney, Kevin B. Salam of Wolf Holland & Solovy, LLP, and submits this Reply Brief in Support of its Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

**I. INTRODUCTION.**

The sole issue raised in Blue Ridge's Motion for Judgment on the Pleadings is the following:

> Did TMS fail to properly exercise its claimed right of first refusal under Paragraph 5(b) of the 1995 Syndication Agreement by including in its August 24, 2007 syndication agreement, paragraph 4(c), which contains an oppressive post termination payment provision that TMS admits was not part of the King proposal?

1

For purposes of this motion, there are no *factual* disputes. There is but one *legal* issue to be determined from the undisputed facts; whether paragraph 4(c) of TMS' counteroffer is "material?" Where as here, there is no factual dispute as to the terms of Paragraph 4(c) and it is not ambiguous, the materiality of Paragraph 4(c) may be determined as a matter of law. Trans-Aire International, Inc. v. Northern Adhesive Co., Inc., 882 F.2d 1254, 1261-1263 (7th Cir. 1989).

Paragraph 4(c) penalizes Blue Ridge approximately one year worth of revenue if *after* TMS' syndication agreement with Blue Ridge ends, Blue Ridge *ever* signs with anyone other than TMS. Where as here, "the parties cannot honestly dispute" the materiality of a provision, materiality may be determined by the court as a matter of law. Id. at 1261. Because Paragraph 4(c) is a material addition to the terms of the King Features proposal, TMS' August 24, 2007 syndication agreement is a counteroffer and TMS failed to timely exercise its claimed right of first refusal under Paragraph 5(b) of the 1995 Syndication Agreement.

## II.  UNDISPUTED FACTS ADMITTED BY THE PLEADINGS.

The pleadings admit all the facts necessary for this Court to grant Blue Ridge's Motion for Judgment on the Pleadings. TMS' correspondence, attached as exhibits to TMS' Answer and Counterclaim, address certain factual issues relevant to this motion and control over any inconsistent allegations in TMS' Answer and Counterclaim. Ogden Martin Systems v. Whiting Corp., 179 F.2d 523, 529 (7th Cir. 1999). And allegations as to legal conclusions, such as "materiality," are of no weight and are insufficient to create a question of fact. Shedd v. Lindsay, 780 F.Supp 554, 557 (N.D. Ill 1991, Norgle, J) ("court not required to accept legal conclusions either alleged or inferred from pleaded

2

facts."); see also R.J.R. Services Inc. v. Aetna, 895 F.2d 279, 281 (7th Cir. 1989) (court "not obliged to ignore any facts set forth in [pleading] that undermine the [party's] claim or to assign any weight to unsupported conclusions of law.")

### A. Paragraph 5(b) of a 1995 Syndication Agreement.

TMS does not dispute that Paragraph 5(b) of the 1995 Syndication Agreement provides a right of first refusal to TMS triggered by TMS' receipt of a " bona fide offer" defined as a "written bid or proposed contract submitted to Artist from a financially responsible third party."  (TMS' July 19, 2007 letter, Ex. 3; Blue Ridge's Answer to TMS' Counterclaim at par. 11).[1]

Again, on July 30, 2007, TMS' counsel wrote:

As I stated on the phone, TMS will consider matching the offer. But first TMS has to receive an offer, in writing, submitted to Blue Ridge Salvage Company, Inc., by a financially responsible third party. Only then is the offer deemed a "bona fide offer" under the terms of the current syndication agreement. And only then does the 30-day right of first refusal period begin to run.

(July 30, 2007 letter from TMS' attorney Beth Fulkerson to Blue Ridge's attorney, Ex. 4)

### B. TMS' August 15, 2007 receipt of King's Written Proposal.

TMS does not dispute that on August 15, 2007, Blue Ridge sent and TMS received the August 8, 2007 King cover letter and proposal.  (Ex. 5; Par. 29 of TMS' Answer).

---

[1] As stated in its initial brief, Blue Ridge continues to dispute whether Paragraph 5(b) of the 1995 Syndication Agreement is enforceable, but argues herein that even if it is, TMS failed to properly exercise its claimed right of first refusal.

Unless otherwise indicated, exhibit references are to the exhibits attached as an appendix to Blue Ridge's initial brief in support of this motion, all of which are exhibits to TMS' Answer and Counterclaim.

TMS argues that there is a factual dispute as to the exact terms of the King proposal. (See TMS' Response Brief at p.8). Blue Ridge claimed in its August 15, 2007 transmittal letter to TMS and its complaint herein that the King proposal included the terms discussed in the King cover letter to the August 8, 2007 proposal document. TMS alleges that the August 8, 2007 King proposal is limited to the 8 terms identified in the document titled "Proposal for Representation of SHOE Comic Strip 8/8/07." Blue Ridge agrees that this is a factual dispute but that it is not relevant to Blue Ridge's motion.

TMS does not dispute that a post termination provision like paragraph 4(c) of TMS' August 24, 2007 syndication agreement is *not* one of the 8 terms in the document titled "Proposal for Representation of SHOE Comic Strip 8/8/07." (Ex. 6; TMS' Answer at Pars. 34-35). Accepting as true TMS' allegation that the "bona fide offer" from King is just the 8 terms and not the terms in the cover letter does not defeat the instant motion. It does not prevent this Court from finding as a matter of law that paragraph 4(c) is a material addition to the 8 terms of the King proposal and thus, TMS' August 24, 2007 syndication agreement was a counteroffer.

C.  **TMS' August 24, 2007 Counteroffer.**

TMS does not dispute that it responded to receipt of the King proposal with its August 24, 2007 syndication agreement that contained paragraph 4(c), which provided:

> In the event of termination, if Blue Ridge Salvage elects to continue syndication of the Feature in any form or through any means, Blue Ridge Salvage shall pay TMS, as compensation for benefits that will inure to Blue Ridge Salvage as a result of Blue Ridge Salvage's association with TMS, a monthly sum equal to fifty percent (50%) of the Feature's total Net Receipts for the month previous to such termination or non-renewal, Such payment to be made for a period of twelve (12) months after the date of termination.

(Ex. 6; TMS' Answer at Pars. 34-35).

4

TMS does not dispute the terms or meaning of the post termination payments required by paragraph 4(c).  TMS does not dispute that Paragraph 4(c) requires Blue Ridge to make 12 monthly payments to TMS, each payment to be equal to 50% of the net proceeds generated by the Feature in the last month prior to termination.  Or that these substantial payments are due if Blue Ridge *ever* signs a syndication agreement for the Feature with anyone other than TMS.

TMS only disputes that paragraph 4(c) is "material."  However, as discussed below this is a legal conclusion and TMS' allegation that paragraph 4(c) is not material is insufficient to prevent this Court from finding as a matter of law that paragraph 4(c) is material.

### III.  PARAGRAPH 4(C) IS MATERIAL AS A MATTER OF LAW

Where as here, the facts are not disputed, the materiality of paragraph 4(c) can be determined as a matter of law.  Trans-Aire International, Inc. v. Northern Adhesive Co., Inc., 882 F.2d 1254, 1261-1263 (7th Cir. 1989) (addressing materiality of an additional term under the U.C.C.).  TMS does not dispute the terms of Paragraph 4(c) or that it was not part of the King proposal.  The only issue is the legal conclusion to draw from these undisputed facts--whether paragraph 4(c) is "material."  TMS denies materiality in its Answer and Counterclaim.  But TMS' denials do not create a question of fact on what is a legal conclusion for the court to draw from the undisputed facts.

Trans-Aire Intern., involved a determination under the Illinois Uniform Commercial Code ("UCC") of whether the addition of an indemnification provision "materially altered" the terms of the proposed contract.  The UCC does not apply to the syndication agreement between TMS and Blue Ridge because the agreement does not

5

involve "goods" but involves services and intangible licensing rights.  See Fink v. DeClassis, 745 F.Supp. 509, 515-516 (N.D. Ill. 1990).  But the legal reasoning used by the Seventh Circuit in Trans-Aire Intern. is equally applicable to a determination of materiality in this case.  The Seventh Circuit compared the unexpected addition of an indemnification clause to the addition of a warranty exclusion, which has been held "material" *per se* under Illinois law.  The Seventh Circuit held that like a warranty exclusion, an indemnification provision potentially shifted substantial economic hardship from one party to the other and thus, rendered the term "material."  Id.

Paragraph 4(c) creates more than a potential shift of economic hardship.  It creates an actual economic hardship.  It requires Blue Ridge to effectively *forfeit* approximately a year's worth of Blue Ridge's revenue from its syndication agreement with TMS if Blue Ridge *ever* does business with someone other than TMS.  Of course, Blue Ridge can always decide to not continue to produce the Feature after the agreement with TMS terminates.  But this too is an actual economic hardship, because it requires Blue Ridge to forgo *any* revenue from the Feature.

TMS erroneously cites Vincent v. Doebert, 183 Ill.App.3d 1081, 1089, 539 N.E.2d 856, 862 (2nd Dist. 1989) for the proposition that "materiality" of a term is always a question of fact.  First, federal procedural law determines whether an issue is a question of fact or a question of law for the court to determine on a motion for judgment on the pleadings.  Second, the Vincent court did not hold that materiality is always a question fact.  In actuality, the court found that the undisputed facts presented in the parties' summary judgment filings established as a matter of law that the "financial status" as opposed to the personal guarantee of the offeror was not part of the offer.  And

6

accordingly, the court held as a matter of law that the right of first refusal had been exercised when the holder of the right offered to personally guarantee the purchase price. Id. at 1089.

Further, unlike paragraph 4(c) of TMS' counteroffer, Vincent involved a dispute as to what were the actual terms of the third party offer-- whether the offer included a net worth or financial status element or just a personal guarantee. In this motion there is no dispute as to the actual terms of King's third party offer. The 8 terms of the King third party offer as alleged by TMS are assumed true for purposes of this motion. Nor does TMS' dispute that its counteroffer includes Paragraph 4(c). The only dispute is whether paragraph 4(c) is material.

TMS also relies on Comark Merchandising, Inc. v. Highland Group, Inc. 932 F.2d 1196, 1200 (7th Cir. 1991) for the proposition that materiality is a question of fact. Comark is distinguishable on its facts. It involved a trial court finding after a bench trial that the addition of an attorney fees provision was a material alteration under the UCC because it created an "unreasonable surprise" to the other party. The Seventh Circuit affirmed this finding as supported by the evidence. The Seventh Circuit did not hold that materiality was never subject to resolution as a matter of law on a motion for judgment on the pleadings.

### IV.  TMS' OTHER ARGUMENTS ALSO FAIL.

A.  **TMS erroneously asserts other disputed questions of fact.**

TMS asserts that there are numerous disputed issues of material fact that defeat Blue Ridge's Motion for Judgment on the Pleadings. (See Response Brief at p.8-9).

However, none of these issues are material to Blue Ridge's Motion for Judgment on the Pleadings.

TMS' argument that there is a dispute as to whether TMS' August 24, 2007 syndication agreement included all 8 terms of the King proposal or whether the King proposal contained more than 8 terms as contended by Blue Ridge were addressed at page 4 of this Reply Brief.

As previously discussed in Blue Ridge's initial Brief in Support, there is no factual or legal issue as to any breach of Illinois' implied duty of good faith and fair dealing because the 1995 Syndication Agreement did not contain any explicit obligation on Blue Ridge to tell TMS that its August 24, 2007 response was an ineffective counteroffer. Blue Ridge provided the written King proposal to TMS on August 15, 2007 triggering TMS' claimed right of first refusal and TMS had 30 days to accept. But instead, TMS decided to counteroffer. TMS has not cited any provision in the 1995 Syndication Agreement that required Blue Ridge to do anything after August 15, 2007 but wait for TMS' response. Nor does the 1995 Syndication Agreement obligate Blue Ridge to sign TMS' counteroffer, which contained paragraph 4(c). Refusing to sign TMS' counteroffer is not bad faith. It is a legitimate dispute over the parties conflicting positions.

Unlike the property owner found to have acted in bad faith in <u>Vincent</u>, 183 Ill.App.3d at 1091, 539 N.E.2d at 862, Blue Ridge did not add a term to King's proposal. Instead, it was TMS who added an oppressive post termination payment provision to its acceptance and thus, counter offered. TMS' reliance on <u>Miller v. LeSea</u>, 87 F.2d 224, 228 (7th Cir. 1996), is similarly misplaced for the same reason. Blue Ridge did not

procure some term from King that had no relevance to the transactions at issue and that Blue Ridge knew would be unacceptable to TMS. TMS admits it could match King's 8 term proposal. Again, it was TMS, not Blue Ridge that added the oppressive post termination payment provision to its counteroffer.

### B.   TMS' misleading statement of the facts.

TMS is trying to distance itself from its August 24, 2007 syndication agreement that contains paragraph 4(c). TMS argues that it repeatedly informed Blue Ridge that it "intended to exercise" its right of first refusal. However, an *intent to exercise* is not the same as the *actual exercise* of a right of first refusal. Then in the next sentence, TMS expands this argument to "TMS repeatedly made clear it was exercising its right of first refusal." (See p. 4 of TMS' Response Brief). But a review of the letters attached to TMS' counterclaim, all of which were written by TMS, demonstrate that these are simply not the facts.

On July 16, 2007, after failing to connect by phone, Robert Vladem of Blue Ridge wrote John Twohey of TMS. Mr. Vladem informed Mr. Twohey of Blue Ridge's ongoing negotiations with an unidentified third party, later identified as King. Mr. Vladem asked whether "TMS wanted to discuss a continued relationship" with Blue Ridge after expiration of TMS' current agreement with Blue Ridge. (Ex. 1). In its July 19, 2007 letter in response, TMS did answer "yes" to Blue Ridge's inquiry as to TMS' interest in a "continued relationship." (Ex. 2).

But the July 19, 2007 letter could not have been the exercise of TMS' claimed right of first refusal. The letter makes this clear by quoting Paragraph 5 of the Syndication Agreement concerning the right of first refusal and requesting a "bona fide

9

offer defined as a 'written bid or proposed contract submitted to Artist by a financially responsible third party.'" The letter then states that TMS is requesting the written bid or proposed contract so that TMS could "consider" the terms.

Similarly, TMS July 30, 2007 letter cannot be the exercise of TMS' claimed right of first refusal. (See. Ex. 4). It states in relevant part:

> As I stated on the phone, *TMS will consider matching the offer.* But *first TMS has to receive an offer, in writing*, submitted to Blue Ridge Salvage, Inc., by a financially responsible third party. Only then is the offer deemed a "bona fide offer" under the terms of the current syndication agreement. And *only then does the 30-day right of first refusal begin to run*. (Emphasis added).

Nor can TMS' August 9, 2007 letter and attached new syndication agreement be considered the exercise of TMS' right of first refusal. First, according to the July 16, 2007 letter from Robert Vladem to TMS, the terms of the King proposal had not yet been fully negotiated, finalized and reduced to a written proposal by Blue Ridge and TMS. So how could TMS accept an as yet unfinished and unwritten King proposal? Second, TMS could not exercise its claimed right of first refusal prior to Blue Ridge delivering a copy of King's written proposal to TMS as required by the 1995 Syndication Agreement and as repeatedly demanded by TMS in its July 19, 2007 and July 30, 2007 letters. Third, like TMS' August 24, 2007 counteroffer, TMS' August 9, 2007 new syndication agreement executed by TMS also contains the very same oppressive post termination provision, paragraph 4(c). (See, Ex. F Syndication Agreement attached to August 9, 2007 letter at Ex. F. to TMS Answer and Counterclaim).

TMS' argument that its August 24, 2007 new syndication agreement was just a version of the prior 1995 Syndication Agreement modified to include the 8 terms of the

10

King proposal is also misleading and disingenuous. The 1995 Syndication Agreement does not contain any post termination payment provision.

Finally, TMS' outside counsel's letter of October 18, 2007 is also ineffective to operate as the exercise of TMS' claimed right of first refusal. (Ex. 8). This letter states that paragraph 4(c) of TMS' counteroffer was "immaterial" and tells Blue Ridge to delete it and sign the August 24, 2007 syndication agreement. As previously discussed, counsel's statement that paragraph 4(c) is immaterial is of no weight. And this letter was sent long after TMS' claimed 30 day right of first refusal expired.

### V. CONCLUSION.

TMS' cannot defeat Blue Ridge's motion by claiming the existence of disputed facts that are inconsistent with its own letters. See, Ogden Martin Systems v. Whiting Corp., 179 F.2d 523, 529 (7th Cir. 1999) ("'[a party] may plead himself out of court by attaching documents to the complaint that indicate he or she is not entitled to judgment.'(citation omitted)." Nor can TMS defeat Blue Ridge's motion by citing to disputed facts that are not material to the issue raised by Blue Ridge's motion.

It is undisputed that TMS included paragraph 4(c), an oppressive post termination payment provision in its August 24, 2007 counteroffer to the King proposal. And under the facts of this case, paragraph 4(c) is a "material" addition to the terms of the King proposal.

Thus, the factual admissions in the pleadings and exhibits thereto, even when considered most favorably to TMS, establish as a matter of law that TMS' failed to exercise its claimed right of first refusal.

                                        Respectfully submitted,
                                        Blue Ridge Salvage Company, Inc.

                                        /s/ Kevin B. Salam
                                        Its attorney.

Kevin B. Salam
**Wolf Holland & Solovy, LLP**
40 Skokie Blvd., Ste. 105
Northbrook, IL 60062
224-330-1717 (Tel.)
224-330-1715 (Fax)