# Exhibit B



# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BLUE RIBBON SALVAGE COMPANY, INC. | )<br>)<br>) 07 CV 6497<br>Plaintiff, )<br>) Honorable Charles R. Norgle<br>v. )<br>) Magistrate Judge Michael T. Mason<br>TRIBUNE MEDIA SERVICES, INC. )<br>)<br>Defendant. ) |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the Court is Plaintiff Blue Ridge Salvage Company, Inc.'s ("Blue Ridge") Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Blue Ridge's Motion is denied.

## I. BACKGROUND

A. Facts

On August 25, 1995, Blue Ridge and Tribune Media Services, Inc. ("TMS") entered into a written syndication agreement ("Syndication Agreement") through which TMS acquired the sole right to syndicate and distribute the "Shoe" comic strip (the "Feature" or "Shoe") to its affiliates and purchasers. The parties also built into the Syndication Agreement a right of first refusal for TMS. Specifically, Paragraph 5(b) of the Syndication Agreement states that:

> If Artist desires to grant to anyone the rights to syndicate and distribute the Feature following the expiration of the term of this Agreement, then Artist shall first offer to TMS the right to match a bona fide offer received by Artist for the Feature. If TMS notifies Artist within thirty (30) days after the receipt of such notice that it accepts the terms and conditions so specified in the bona fide offer to

>Artist, the notice from Artist and the acceptance by TMS shall constitute a binding agreement.

In short, if Blue Ridge received a bona fide offer of syndication from another media outlet, Paragraph 5(b) required Blue Ridge to forward the offer to TMS who would then decide, within thirty days, whether it wanted to match the offer.

On August 15, 2007, counsel for Blue Ridge, in compliance with Paragraph 5(b), forwarded to TMS a purported offer from King Features to syndicate the Shoe comic strip. See Def.'s Answer, Ex. G, Ltr. to Beth Fulkerson. The offer, according to Blue Ridge, consisted of two documents. The first was a cover letter from the President of King Features that outlined the benefits that Blue Ridge would receive if King Features handled Shoe's syndication. The second was a one-page attachment to the cover letter entitled "Proposal for Representation of SHOE Comic Strip," which set forth eight provisions that would govern the parties' relationship over a twenty year term.

On August 24, 2007, TMS responded to Blue Ridge with a letter entitled "Re: Acceptance of Offer to Artist and Response to Your Letter of August 15, 2007." See Def.'s Answer, Ex. I, Ltr. to Steven B. Wolf. In its response, TMS stated that it "hereby notifies Blue Ridge that it accepts the terms and conditions specified in the bona fide offer that Blue Ridge received from King Features." TMS, however, took it one step further. TMS also attached a new, signed syndication agreement ("Formal Agreement") that may have incorporated the terms of the King Features offer, but set forth additional provisions, which TMS claims are immaterial. For instance, the Formal Agreement contained an additional provision, Paragraph 4(c), which provided:

>In the event of termination, if Blue Ridge Salvage elects to continue syndication of the Feature in any form of through any means, Blue Ridge Salvage shall pay TMS, as compensation for benefits that will inure to Blue Ridge Salvage as a

2

result of Blue Ridge Salvage's association with TMS, a monthly sum equal to fifty percent (50%) of the Feature's total Net Receipts for the month previous to such termination or non-renewal, such payment to be made for the period of twelve (12) months after the date of termination.

TMS admitted in its Answer and Counterclaim that the parties' Syndication Agreement did not contain a provision resembling Paragraph 4(c) of the Formal Agreement. As it turns out, Paragraph 4(c) is at the root of this controversy.

## II. DISCUSSION

### A.   Standard of Decision

The court reviews Rule 12(c) motions for judgment on the pleadings under the same standard applicable to dismissals under Rule 12(b)(6) for failure to state a claim on which relief can be granted. Guise v. BWM Mortg., LLC, 377 F.3d 795, 798 (7th Cir. 2004). In considering a 12(c) motion, the court accepts the facts alleged in the complaint in the light most favorable to the non-moving party. Guise, 377 F.3d at 798. All allegations of fact by the party opposing the motion are accepted as true, while the allegations of the moving party which have been denied are assumed to be false. Sutton v. Chi. Police Dep't, No. 93 C 2232, 1997 WL 135675, at *5 (N.D. Ill., Mar. 21, 1997). The court will grant the motion only if no genuine issues of material fact exist and if it appears beyond doubt that the non-moving party is unable to prove any set of facts to support its claim for relief. Brunt v. SEIU, 284 F.3d 715, 718-19 (7th Cir. 2002).

### B.   The Materiality of Paragraph 4(c)

At the outset, this Court agrees with TMS that the determination of whether a term is material is a question of fact, not a question of law. See Comark Merchandising, Inc. v. Highland Group, Inc., 932 F.2d 1196, 1203 n.8 (7th Cir. 1991)(noting that whether an additional term constitutes a "material alteration" is a question of fact); see also Allied Elevator, Inc. v. E. Tex. State Bank of Buna, 965 F.2d 34, 38 (5th Cir. 1992)(holding that a question of fact exists

3

when determining the materiality of a provision added to an insurance policy); see also Issen v. GSC Enterprises, Inc., 522 F.Supp. 390, 397-98 (N.D. Ill. 1981)(denying defendants' motion to dismiss where questions of fact existed as to whether certain information, undisclosed in a corporate proxy statement, was "material"); Vincent v. Doebert, 183 Ill. App. 3d 1081, 1089 (2d Dist. 1989). Here, the Court is faced with two competing theories as to the materiality of Paragraph 4(c) of the Formal Agreement.

In support of its Rule 12(c) motion, Blue Ridge maintains that the addition of Paragraph 4(c) in the Formal Agreement, despite the palpable language in TMS' August 24 letter, constituted a counteroffer that invalidated TMS' acceptance of the terms and conditions specified in the offer from King Features. In essence, Blue Ridge argues that the addition of Paragraph 4(c) was a material change that rendered TMS' acceptance defective. What is more, Blue Ridge asserts that because TMS substituted a counteroffer in the place its right of first refusal, TMS failed to exercise its right of first refusal within the thirty-day time period allotted in the parties' Syndication Agreement.

TMS, however, offers a different view. In its Answer and Counterclaim, TMS alleges that its August 24 letter was not a counteroffer, but instead was an unequivocal acceptance of the terms offered by King Features. See Def.'s Answer at ¶¶ 36-40. TMS further alleged that it properly exercised its right of first refusal within the required timeframe. Id. In support, TMS alleged that Paragraph 4(c) of the Formal Agreement was an immaterial provision that simply outlined the rights of the parties twenty years later, when the Formal Agreement terminated. See id. at ¶¶ 36, 39; see also Def.'s Memo. In Opposition ("Def.'s Memo.") at pp. 11-12. TMS proposes that the immateriality of Paragraph 4(c) is evidenced by TMS's subsequent decision to

4

discard Paragraph 4(c) when Blue Ridge objected to its inclusion in the Formal Agreement. See Def.'s Answer, Ex. K, Oct. 18 Ltr.; Def.'s Memo at 12.

C.   **A Genuine Issue of Fact Exists**

TMS has alleged enough to raise a factual issue regarding the materiality of Paragraph 4(c) of the Formal Agreement. Moreover, given the limited pleadings to date, this Court cannot accept, beyond doubt, that TMS is unable to prove any set of facts to support its claim that it accepted the terms in the King Features offer within the thirty-day timeframe. Indeed, in its Answer and Counterclaim, TMS blatantly challenged or denied many of the allegations put forth by Blue Ridge to support the opposite view. And, given the standards that govern Rule 12(c) motions, this Court must accept TMS' allegations as true. Accordingly, this Court finds that a factual question exists as to whether Paragraph 4(c) of the Formal Agreement is a material term, so that its addition would nullify TMS' exercise of its right of first refusal. This factual question alone is enough to deny Blue Ridge's motion for judgment on the pleadings.

### III. CONCLUSION

For the foregoing reasons, Plaintiff Blue Ridge's Motion for Judgment on the Pleadings, brought pursuant to Federal Rules of Civil Procedure 12(c), is denied.

IT IS SO ORDERED.

ENTER:

*Charles R. Norgle*

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: 2-11-08

5